1

2

3

4

5

6

7                        UNITED STATES DISTRICT COURT

8                    FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   JAMUL ACTION COMMITTEE, et al.,          No.  2:13-cv-01920-KJM-KJN

11                 Plaintiffs,

12           v.                                ORDER

13   TRACIE STEVENS, et al.,

14                 Defendants.

15

16           The separate motions to dismiss by defendants Jonodev Chaudhuri, Dawn Houle,

17   S.M.R. Jewell, Kevin Washburn, Paula L. Hart, Amy Dutschke, John Rydzik, the United States

18   Department of the Interior, and the National Indian Gaming Commission (collectively "federal

19   defendants") and defendant Raymond Hunter ("defendant Hunter") are currently pending before

20   the court.  Also before the court are Jamul Indian Village's motion for leave to file an amicus

21   curiae brief and request for judicial notice, and the ex parte application to conduct discovery and

22   schedule an evidentiary hearing brought by plaintiffs Jamul Action Committee, Jamul

23   Community Church, Darla Kasmedo, Paul Scripps, Glen Revell and William Hendrix

24   (collectively "plaintiffs").

25           The court heard oral argument on the matters on May 23, 2014.  Kenneth Williams

26   appeared for plaintiffs; Judith Rabinowitz and Barbara Marvin appeared for the federal

27   defendants; and Frank Lawrence appeared for defendant Hunter and proposed amicus Jamul

28   Indian Village.

                                           1

After considering the parties' papers and arguments, the Jamul Indian Village's motion for leave to file an amicus brief is GRANTED, its request for judicial notice is GRANTED IN PART AND DENIED IN PART; plaintiffs' ex parte application for discovery and an evidentiary hearing is DENIED; defendant Hunter's motion to dismiss is GRANTED; and the federal defendants' motion to dismiss is GRANTED.

Also before the court is plaintiffs' June 4, 2014 motion to amend the first amended complaint.  For the reasons set forth in this order, plaintiffs' motion to amend is DENIED.

I.       BACKGROUND

On September 15, 2013, plaintiffs filed their original complaint.  ECF No. 1.  On February 27, 2014, following the filing of a motion to dismiss by the federal defendants, plaintiffs amended their complaint.  ECF No. 15.

On March 17, 2014, the federal defendants filed a motion to dismiss for, *inter alia*, lack of subject matter jurisdiction and failure to join a required party.  ECF Nos. 20, 21.  Plaintiffs opposed on May 9, 2014, ECF No. 31, and the federal defendants replied on May 16, 2014.  ECF No. 37.

On April 25, 2014, defendant Hunter filed a motion to dismiss for failure to state a claim upon which relief can be granted and claiming tribal sovereign immunity.  ECF No. 23.  Plaintiffs opposed on May 9, 2014, ECF No. 30, and defendant Hunter replied on May 16, 2014.  ECF No. 36.

On April 25, 2014, the Jamul Indian Village filed a motion for leave to file an amicus brief and an amicus brief in support of all defendants' motions to dismiss.  ECF No. 22.  On May 1, 2014, plaintiffs filed an ex parte application to continue the May 23, 2014 hearing.  ECF No. 24.  Defendant Hunter and the federal defendants filed a response and conditional non-opposition on May 2 and May 5, 2014, respectively.  ECF Nos. 25, 26.  On May 12, 2014, the court denied plaintiffs' ex parte application to continue the hearing.  ECF No. 32.

On May 5, 2014, plaintiffs filed an ex parte application to continue the hearing on the motions to dismiss, to conduct discovery and to set an evidentiary hearing, predominantly based on the federal defendants' jurisdictional challenge.  ECF No. 27.  On May 7, 2014, the

1   defendants opposed the application.  ECF Nos. 28, 29.  On May 12, 2014, the court denied

2   plaintiffs' ex parte application to continue the hearing.  ECF No. 32.

3          On May 23, 2014, the court held a hearing on the parties' outstanding motions.

4   ECF No. 40.

5          On June 4, 2014, plaintiffs' filed a motion to amend the first amended complaint.

6   ECF No. 42.

7   II.    ALLEGATIONS OF THE FIRST AMENDED COMPLAINT

8          A.  Exhibits

9          As a preliminary matter, the court notes plaintiffs incorporate by reference exhibits

10  attached to their original complaint.  First Am. Compl. ("FAC"), at 2 n.1, ECF No. 15.  The court

11  will not refer to a prior pleading or exhibits in order to make plaintiffs' first amended complaint

12  complete.  Local Rule 220 requires an amended complaint be complete in itself without reference

13  to any prior pleading.  This is because, as a general rule, an amended complaint supersedes the

14  original complaint.  *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 927 (9th Cir. 2012).

15         During oral argument plaintiffs submitted to the court two articles in support of

16  their first amended complaint.  The court construed the submission as a request to expand the

17  record and noted defendants' objections.  *See* ECF No. 41.  The court now grants plaintiffs'

18  request.

19         B.  Claims

20         Plaintiffs bring this action under the Administrative Procedures Act ("APA"),

21  5 U.S.C. § 704, for violations of the Indian Reorganization Act of 1934 ("IRA"), the Indian

22  Gaming Regulatory Act ("IGRA") and the National Environmental Policy Act ("NEPA").  *See*

23  FAC ¶¶ 1, 4, 8, 11.  Plaintiffs allege as follows:  The National Indian Gaming Commission

24  ("NIGC") issued a final agency action declaring the Jamul Indian Village has "Indian lands" that

25  qualify for gambling under IGRA.  *Id.* ¶ 1.  The determination, referred to by plaintiffs as an

26  Indian Lands Determination, was first included in NIGC's April 10, 2013 Notice of Intent to

27  Prepare a Supplemental Environmental Impact Statement for the Approval of a Gaming

28  /////

1    Management Contract ("NOI").  *Id.*; *see* 78 Fed. Reg. 21398–01 (Apr. 10, 2013).[1]  Plaintiffs

2    allege the Indian Lands Determination "is a final agency action of the NIGC" embedded in the

3    Supplemental Environmental Impact Statement, "to permit the NIGC to approve the Management

4    Contract" for the operation of a casino on a parcel of land that is "not a reservation," and the

5    Jamul Indian Village has not "exercised government control over the Parcel."  *Id.* ¶ 3.  Plaintiffs

6    allege the parcel of land "does not qualify as Indian lands eligible for gambling under IGRA,

7    25 U.S.C. § 2703."  *Id.*  Plaintiffs allege "[t]he Defendants lack the authority under . . . [IRA] to

8    take the Parcel in trust for the [Jamul Indian Village] or to treat it like a reservation" for the Jamul

9    Indian Village.  *Id.* ¶ 4.

10           With regard to development of the parcel, plaintiffs allege: (1) the NOI "triggered"

11   construction on the parcel, *id.* ¶¶ 8, 14; (2) if the NOI stands the Jamul Indian Village will

12   "likely" build and operate a casino on the parcel; and (3) construction has already commenced, *id.*

13   ¶ 88.

14           Plaintiffs' first claim for relief alleges a violation of the IRA.  Plaintiffs allege

15   "[d]efendants lack the authority under the [IRA] . . . to take the Parcel in trust for the [Jamul

16   Indian Village] or to treat it like a reservation" for the Jamul Indian Village.  *Id.* ¶ 4.  Plaintiffs

17   allege defendants were without the legal authority to acquire or hold this land, and did not acquire

18   or hold this land, in trust for the Jamul Indian Village as a tribe.  *Id.* ¶ 53.  Plaintiffs allege

19   although the Jamul Indian Village Indians eventually organized as a tribal entity under the IRA,

20   they never acquired or lawfully exercised governmental power over the parcel, *id.* ¶¶ 59, 62; and

21   while the beneficial owners of the parcel are individual Jamul Indians, the Jamul Indian Village

22   had no authority to transfer the land to a tribe that was not under federal jurisdiction in June of

23   1934.  *Id.* ¶ 64.  Plaintiffs allege because no Indian tribe exercises governmental power over the

24   parcel, it cannot comprise "Indian lands" qualified for gambling under IGRA.  *Id.*

25   /////

---

26         [1]  The court, *sua sponte*, takes judicial notice of the NOI.  FED. R. EVID. 201(b), (c)(1).  As
     a matter of public record, the NOI is "capable of accurate and ready determination by resort to
27   sources whose accuracy cannot reasonably be questioned."  *Id.*  A court's consideration of
     documents as a matter of judicial notice will not convert a motion to dismiss into a motion for
28   summary judgment.  *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003).

Plaintiffs' second claim for relief alleges defendants unconstitutionally infringed on California's jurisdiction over non-public domain property.  Plaintiffs allege defendants' decision in the NOI regarding the land infringes on private land titles and on state and local police power to regulate its citizenry for the benefit of all citizens and is a violation of the equal footing doctrine and the Tenth Amendment of the Constitution.  *Id.* ¶ 127.  Accordingly, plaintiffs allege the decision by defendants in the NOI to treat the land as a reservation or Indian lands exempt from state and local regulation and taxation is arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law.  *Id.* ¶ 128.

Plaintiffs' third claim for relief alleges defendants violated IGRA because the determination that the parcel is a reservation or Indian land eligible for gambling was arbitrary, capricious and not in accordance with the law.  *Id.* ¶ 132.  IGRA only permits gambling on Indian land "over which an Indian tribe exercises governmental power."  *Id.* ¶ 77.  Plaintiffs assert the government never obtained the consent of the individual Jamul Indians to transfer the parcel into trust for the Jamul Indian Village.  *Id.* ¶ 79.  Likewise, the government never conveyed title to the parcel in trust for the Jamul Indian Village.  *Id.*  The Jamul Indian Village never lawfully exercised governmental power over the parcel because it was never transferred to the Jamul Indian Village.  *Id.*  Plaintiffs allege because no tribe exercises governmental power over the land, 25 U.S.C. § 2703 does not apply and the parcel remains subject to California law.  *Id.* ¶ 80.  Thus, plaintiffs allege the lands determination embedded within the NOI was arbitrary, capricious and against the law.  *Id.* ¶¶ 81, 135.

Plaintiffs' fourth claim for relief alleges defendants violated NEPA because defendants did not prepare an environmental assessment or take steps to comply with NEPA before approving the lands determination.  *Id.* ¶ 139.  Plaintiffs allege defendants violated their responsibilities under 42 U.S.C. § 4321 by failing to take a proper "hard look" at the environmental impact of the casino.  *Id.* ¶ 142.  Plaintiffs allege defendants ignored, failed to adequately consider, or failed to mitigate the environmental impacts of the casino on the surrounding community.  *Id.* ¶ 141.

*////*

1    Finally, plaintiffs seek a judgment declaring, *inter alia*, "the [Indian Lands

2    Determination] that the Parcel is reservation or Indian lands eligible for tribal gaming is arbitrary,

3    capricious, and contrary to law" and "the Defendants have no authority to take the Parcel."  *Id.* at

4    44–45.

5    III.    JAMUL INDIAN VILLAGE'S MOTION TO FILE AN AMICUS BRIEF

6         A.  Tribal Sovereign Immunity

7         As a threshold matter, the court finds it necessary to address whether the Jamul

8    Indian Village is a federally recognized tribal entity entitled to tribal sovereign immunity, in light

9    of plaintiffs' clarification they "do not intend to concede that the [Jamul Indian Village] is a

10   federally recognized tribe entitled to sovereign immunity," FAC ¶ 21, and their characterization

11   of the Jamul Indian Village as "not an inherent sovereign." *Id.* ¶ 59.  These statements are in

12   tension with plaintiffs' opposition to the Jamul Indian Village's motion to file an amicus curiae

13   brief, in which they argue the Village waived tribal sovereign immunity.  *See* ECF No. 24 at 4–5;

14   ECF No. 39 at 2 n.1.  Their opposition suggests plaintiffs in fact concede the Jamul Indian

15   Village is a federally recognized tribal entity.

16        "Inclusion of a tribe on the Federal Register list of recognized tribes is generally

17   sufficient to establish entitlement to sovereign immunity."  *Larimer v. Konocti Vista Casino*

18   *Resort, Marina & RV Park*, 814 F. Supp. 2d 952, 955 (N.D. Cal. 2011) (citing *Ingrassia v.*

19   *Chicken Ranch Bingo & Casino*, 676 F. Supp. 2d 953, 957 (E.D. Cal. 2009)).

20        Here, the Jamul Indian Village is listed on the Federal Register as a "tribal entit[y]

21   recognized and eligible for funding and services from the Bureau of Indian Affairs by virtue of

22   their status as [an] Indian tribe[]."  79 Fed. Reg. 4748-02, 4748 (Jan. 29, 2014).[2]  The Federal

23   /////

24   /////

25   /////

26   /////

27        [2] The court, *sua sponte*, takes judicial notice of the Federal Register list.  FED. R. EVID.
28   201 (b), (c)(1).  As a matter of public record, the Federal Register is "capable of accurate and
     ready determination by resort to sources whose accuracy cannot reasonably be questioned."  *Id.*

Register states:

> The listed Indian entities are acknowledged to have the immunities and privileges available to federally recognized Indian tribes by virtue of their government-to-government relationship with the United States as well as the responsibilities, powers, limitations and obligations of such tribes.

*Id.* at 4749. The Federal Register clearly states the Jamul Indian Village is recognized as a tribal entity by the United States government and is entitled to sovereign immunity. *Accord*, *Bodi v. Shingle Springs Band of Miwok Indians*, No. CIV. S–13–1044 LKK/CKD, 2014 WL 1922783, at *4 (E.D. Cal. May 14, 2014); *Colmar v. Jackson Band of Miwuk Indians*, CIV S–09–0742 DAD, 2011 WL 2456628, at *2 n.2 (E.D. Cal. June 15, 2011); *Ingrassia*, 676 F. Supp. 2d at 957. Plaintiffs cite no authority, and the court is unaware of any, in support of the proposition that the Jamul Indian Village is not entitled to tribal sovereign immunity or is not an "inherent sovereign." FAC ¶¶ 21, 59.

The Jamul Indian Village is a federally recognized tribal entity entitled to tribal sovereign immunity. Accordingly, the court will hereinafter refer to the Jamul Indian Village as "the Tribe."

B.    The Tribe's Motion for Leave to File an Amicus Curiae Brief

The Tribe moves the court for leave to file an amicus curiae brief in support of defendants' motions to dismiss. ECF No. 22 at 8. It avers the relief sought by plaintiffs' first amended complaint "poses a clear and direct assault on the Tribe's interest in its lands." *Id.* at 11. The Tribe summarizes nearly twenty years of litigation over development of the parcel at issue, positing "[u]nderstanding an abbreviated history of some of the litigation brought by Jamulians against the Tribe's interests is essential to contextualize the significance of the Tribe's interests that are at stake" in this action. *Id.* at 12–23 (summarizing fourteen separate actions). The Tribe argues the court should grant leave to file an amicus brief where the legal issues "have potential ramifications beyond the parties directly involved." *Id.* at 23–24. Defendants do not oppose the Tribe's request for amicus status. Plaintiffs argue the Tribe filed its motion as a "litigating amicus" in an effort "to assert its own interests to the detriment of the real parties" thereby

/////

1    waiving its sovereign immunity.  ECF No. 24 at 3.  The court addresses whether the Tribe waived

2    sovereign immunity in a separate section below.

3             The district court has broad discretion regarding the appointment of amici.

4    *Hoptowit v. Ray*, 682 F.2d 1237, 1260 (9th Cir. 1982), *abrogated on other grounds by Sandin v.*

5    *Conner*, 515 U.S. 472 (1995); *In re Roxford Foods Litig.*, 790 F. Supp. 987, 997 (E.D. Cal. 1991).

6    "An amicus brief should normally be allowed" when, among other considerations, "the amicus

7    has unique information or perspective that can help the court beyond the help that the lawyers for

8    the parties are able to provide."  *Cmty. Ass'n for Restoration of Env't (CARE) v. DeRuyter Bros.*

9    *Dairy*, 54 F. Supp. 2d 974, 975 (E.D. Wash. 1999) (citing *Northern Sec. Co. v. United States*,

10   191 U.S. 555, 556 (1903)).  Here, as a tribal entity with interests and involvement in the

11   development of the parcel at issue, the Tribe can provide information related to the parties'

12   interests that may be helpful to the court.

13            To the extent plaintiffs argue amicus status should not be granted because the

14   Tribe seeks to assert its own interests, ECF No. 24 at 3, and is therefore not a neutral party,

15   amicus status is not barred.  While "[h]istorically, amicus curiae is an impartial individual who

16   suggests the interpretation and status of the law, gives information concerning it, and advises the

17   Court in order that justice may be done, rather than to advocate a point of view so that a cause

18   may be won by one party or another," *Cmty. Ass'n for Restoration of Env't (CARE)*, 54 F. Supp.

19   2d at 975, the Ninth Circuit has said "there is no rule that amici must be totally disinterested."

20   *Funbus Sys., Inc. v. State of Cal. Pub. Utils. Comm'n*, 801 F.2d 1120, 1125 (9th Cir. 1986); *see*

21   *also Hoptowit*, 682 F.2d at 1260 (upholding district court's appointment of amicus curiae, even

22   though amicus entirely supported only one party's arguments).  The court has the ability to glean

23   useful information from the Tribe's filing without being swayed by any pure advocacy.

24            Accordingly, the Tribe's motion to file an amicus brief is GRANTED.

25   /////

26   /////

27   /////

28   /////

8

1    IV.    THE TRIBE'S REQUEST FOR JUDICIAL NOTICE

2          In their amicus brief, the Tribe asks the court to take judicial notice of twenty-four

3    documents comprising four pages of Department of Interior correspondence, various state and

4    federal court filings and newspaper articles detailing disputes over development of the parcel at

5    issue.  ECF Nos. 22-2 – 22-7.

6          Plaintiffs oppose the Tribe's request, arguing "[a]n amicus is limited to the record

7    as presented by the parties."  ECF No. 24 at 4.  On May 22, 2014, the day before the court's

8    hearing on the matter, plaintiffs supplemented their opposition to the Tribe's request.[3]  ECF

9    No. 39.  Plaintiffs argue that the Tribe is attempting an impermissible expansion of the record.

10   Plaintiffs argue "[t]he involvement of an amicus is limited to suggestions about matters apparent

11   on the record or matters of practice.  The amicus has no authority to supplement the record or file

12   pleading [sic] or other similar documents as though they were a party."  ECF No. 24 at 4 (citing

13   *NGV Gaming Ltd. v. Upstream Point Molate LLC*, 355 F. Supp. 2d 1061, 1067–68 (N.D. Cal.

14   2005)).

15         Under Rule 201 of the Federal Rules of Evidence, a court "may judicially notice a

16   fact that is not subject to reasonable dispute because it: (1) is generally known . . . ; or (2) can be

17   accurately and readily determined from sources whose accuracy cannot reasonably be

18   questioned."  While matters of public record are generally subject to judicial notice, *Lee v. City of

19   L.A.*, 250 F.3d 668, 689 (9th Cir. 2001), it ultimately is a proponent's burden to show facts

20   contained in documents are proper subjects of judicial notice.  *Hurd v. Garcia*, 454 F. Supp. 2d

21   1032, 1055 (S.D. Cal. 2006).

22         In opposing the Tribe's request, plaintiffs rely on *NGV Gaming*, which addressed

23   reasons for allowing a non-party to participate in an action as amicus curiae, as well as the limits

24   of amicus participation.  *NGV Gaming*, 355 F. Supp. 2d at 1067–68.  The court explained

25   "participation [as amicus curiae] is restricted to suggestions relative to matters apparent on the

26   record or to matters of practice."  *Id.* at 1068 (citing *Wiggins Bros., Inc. v. Dep't of Energy*,

27         [3] The Tribe objected to plaintiffs' untimely objections during oral argument, citing *Burch
     v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1118–19 (E.D. Cal. 2006).  In light of the
28   court's findings, the Tribe's objections are overruled as moot.

667 F.2d 77 (Temp. Emer. Ct. App. 1981)).  In *Wiggins Bros.*, the court found "[i]n the absence

of exceptional circumstances . . . , amicus curiae cannot expand the scope of this appeal to

implicate issues that were not presented by the parties" or "introduce additional evidence . . . ."

*Wiggins Bros.*, 667 F.2d at 83.  Within the Ninth Circuit, *Wiggins Bros.* has only been cited by

*NGV Gaming* in the context explained above.

          "Even when a party is very well represented, an amicus may provide important

assistance to the court.  'Some amicus briefs collect background or factual references that merit

judicial notice.'"  *Neonatology Associates, P.A. v. C.I.R.*, 293 F.3d 128, 132 (3d Cir. 2002) (Alito,

J.)  Notwithstanding the language in *Wiggins Bros.*, courts in this circuit frequently grant requests

for judicial notice by an amicus curiae.  For example, in *Woodfin Suite Hotels, LLC v. City of

Emeryville*, No. C 06–1254 SBA, 2007 WL 81911, at *3 (N.D. Cal. Jan. 9, 2007), amici

requested judicial notice of a printout from a government website, data from the Bureau of Labor

Statistics, and the fact that two articles about hotel industry revenues had been published, not for

the truth of their content.  The court granted the request, stating "[u]nder Federal Rule of

Evidence 201(b), the Court may take judicial notice of documents 'capable of accurate and ready

determination by resort to sources whose accuracy cannot reasonably be questioned.'"  *Id.*; *see

also Winfrey v. McDaniel*, 487 F. App'x 331, 332 n.3 (9th Cir. 2012) (granting amicus curiae's

request for judicial notice of court records); *Hensley v. U.S. Dist. Court E. Dist. of Cal.*, No. CIV

S–07–1546 FCD DAD PS, 2008 WL 480000, at *2, 14 (E.D. Cal. Feb. 19, 2008) (report and

recommendation granting amicus United States' request for judicial notice of court records),

*adopted sub nom. Gary Lee Hensley v. U.S. Dist. Court E. Dist. of Cal.*, 2008 WL 800638 (E.D.

Cal. Mar. 26, 2008); *Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1109 n.8 (C.D. Cal. 2002)

(taking notice of amicus organization's policy as requested in amicus curiae's request for judicial

notice); *E.E.O.C. v. Tortilleria La Mejor*, 758 F. Supp. 585, 592 n.4 (E.D. Cal. 1991) (granting

amicus curiae's request for judicial notice of court filing in different case); *Murphy v. Milbray*,

782 F. Supp. 1420, 1433 n.34 (S.D. Cal. 1991) (taking notice of letter included in amicus curiae's

request for judicial notice); *Natural Res. Def. Council v. Patterson*, 333 F. Supp. 2d 906, 922 n.10

(E.D. Cal. 2004) (granting amicus curiae's request for judicial notice of a full text State Board

1   decision); *Border Power Plant Working Grp. v. Dep't of Energy*, 260 F. Supp. 2d 997, 1011–12

2   (S.D. Cal. 2003) (granting amici's requests for judicial notice of extra-record materials).

3           Where courts have rejected requests for judicial notice by an amicus, they have

4   done so without reference to *Wiggins Bros.*, *NGV Gaming* or a general limitation against amici

5   "expanding" the record.  *See*, *e.g.*, *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1077 (9th

6   Cir. 2013) (request denied without comment); *Sierra Club v. Tahoe Reg'l Planning Agency*, No.

7   2:13–cv–00267, 2014 WL 1366253, at *4 (E.D. Cal. Apr. 4, 2014) (request denied as irrelevant);

8   *Bess v. Alameida*, No. CIV S-03-2498, 2007 WL 2481682, at *26 (E.D. Cal. Aug. 29, 2007)

9   (request denied as unnecessary).

10          Here, the issue is whether an amicus can request judicial notice of documents.

11   Plaintiffs have cited no authority, and the court is unaware of any, specifically barring an

12   amicus's request for judicial notice because of its status as an amicus.  *NGV Gaming* did not

13   involve a request for judicial notice filed by an amicus, and the court is not prepared to rely on it

14   to bar the Tribe's request in light of the substantial authority to the contrary.  Accordingly, the

15   court finds the amicus Tribe's request for judicial notice can be considered, notwithstanding its

16   status as a nonparty to the action.  The court thus turns to the merits of the Tribe's request.

17          With regard to the Department of Interior documents and state and federal court

18   filings, these documents are "capable of accurate and ready determination by resort to sources

19   whose accuracy cannot reasonably be questioned."  FED. R. EVID. 201.  Accordingly, the request

20   for judicial notice of Exhibit Nos. 1–12 is GRANTED.

21          With regard to the newspaper articles, Exhibit Nos. 13–24, the Tribe argues the

22   documents are offered as admissible nonhearsay as an admission of a party opponent in support

23   of its collateral estoppel argument.  ECF No. 22-2 at 5–6.  Specifically, the documents are offered

24   to show, *inter alia*, plaintiffs' own assertion "of the identity of interests between Plaintiffs,

25   Mr. Webb, Ms. Toggery and Mr. Rosales, in stopping the Tribe from developing a casino project

26   on its Indian lands."  *Id.* at 6.

27          The Tribe relies in part on *Boyd v. City of Oakland*, 458 F. Supp. 2d 1015, 1050

28   (N.D. Cal. 2006), in support of its argument the articles are admissible as nonhearsay or because

1   they are not offered for the truth of the matter asserted.  However, in *Boyd*, the party opponent

2   admitted in deposition he made the quoted statements in the newspaper article to the reporter.  *Id.*

3   Based on the party's admission, the court found the quoted statements were admissible.  *Id.*  Here,

4   plaintiffs do not admit they made the quoted statements.  The newspaper articles offered by the

5   Tribe are hearsay: even if the statements the Tribe seeks to admit satisfy some hearsay exception,

6   the authors of the articles have not provided a declaration affirming what plaintiffs said.  *Larez v.*

7   *City of L.A.*, 946 F.2d 630, 642 (9th Cir. 1991) ("As the reporters never testified nor were

8   subjected to cross-examination, their transcriptions of Gates's statements involve a serious

9   hearsay problem."); *Green v. Baca*, 226 F.R.D. 624, 637–38 (C.D. Cal. 2005).  Moreover, the

10   proffered articles do not include quotes specifically attributed to party opponents in this action.

11   Accordingly, the Tribe's request for judicial notice of Exhibit Nos. 13–24 is DENIED.

12   V.      WAIVER OF TRIBAL SOVEREIGN IMMUNITY

13              As a separate issue, plaintiffs argue "by making a general appearance in this case

14   and filing the [request for judicial notice] without qualification, and thereby acting as though it

15   was a party, the [Tribe] waived its claim of sovereign immunity," ECF No. 39 at 2 n.1, and

16   "exceeded its potential role as an amicus," ECF No. 24 at 4–5.  Plaintiffs argue the Tribe's

17   actions amount to "taking affirmative litigation steps in federal court," thus justifying a finding

18   the Tribe waived its tribal sovereign immunity.  ECF No. 39 at 2 n.1.  During the hearing,

19   plaintiffs further argued the collateral estoppel issue raised by the Tribe and not joined by

20   defendants creates a new argument, which results in a "litigating amicus" status and a waiver of

21   immunity.  The Tribe responded to plaintiffs' contentions during the court's hearing, arguing the

22   filing of an amicus does not constitute a waiver of tribal sovereign immunity.

23              In *United States v. Michigan*, 940 F.2d 143, 164 (6th Cir. 1991), the Sixth Circuit

24   traced the origins of the "legal mutant characterized as 'litigating amicus curiae[.]'"  The court

25   found while the traditional role of an amicus in litigation was not to provide a highly partisan

26   account of the facts, but to aid the court in resolving difficult issues of law, "[o]ver the years, . . .

27   some courts have departed from the orthodoxy of amicus curiae as an impartial friend of the court

28   and have recognized a *very limited* adversary support of given issues through brief and/or oral

1  argument." *Id.* at 165 (emphasis in original).  Even so, the court noted "amicus has been

2  consistently precluded from initiating legal proceedings, filings pleadings, or otherwise

3  participating or assuming control of the controversy in a totally adversarial fashion." *Id.*  The

4  court disapproved of the district court's decision to grant a nonparty's request to intervene as a

5  "litigating amicus curiae" with full litigation rights "including, but not limited to, the right to file

6  pleadings, conduct discovery, introduce evidence at proceedings, [and] issue and enforce

7  subpoenas . . . ." *Id.* at 163.  In rejecting the district court's decision, the Sixth Circuit explained

8  it essentially "impressed upon [the parties] an intruder with equal litigating rights of a named/real

9  party in interest, thereby subverting the rights of [the parties] to effectively control the future

10  course of the proceedings." *Id.* at 166.  As such, the court determined "the judicial fiat of the

11  'litigating amicus curiae' in the instant case transcends the traditional concept of that term within

12  accepted jurisprudence." *Id.*

13      The concept of "litigating amicus curiae" has gone largely unaddressed within the

14  Ninth Circuit.  In *NGV Gaming*, relied on by plaintiffs, the court explained "an amicus curiae is

15  not a party and has no control over the litigation and no right to institute any proceedings in it, nor

16  can it file any pleadings or motions in the case."  355 F. Supp. 2d at 1068.  Rather, a nonparty

17  "may participate as amicus curiae, but its participation is restricted to suggestions relative to

18  matters apparent on the record or to matters of practice." *Id.*  The court allowed a nonparty tribe

19  to participate as an amicus curiae, but noted that "[m]otions to file 'oppositions' to Plaintiffs'

20  briefs, and reference to the Tribe's 'pleadings' indicate that the Tribe is attempting to exceed its

21  stated role as amicus curiae.  Such motions will not be considered by this Court." *Id.*

22      Nor has the Ninth Circuit addressed whether an amicus can introduce an issue that

23  has not been introduced by the parties.  In *Toussaint v. McCarthy*, 801 F.2d 1080, 1106 n.27 (9th

24  Cir. 1986), the court did consider an issue that had been introduced by the plaintiffs but briefed

25  only by the participating amicus.  *Id.*  Outside the Ninth Circuit, at least one court has granted

26  judicial notice of an issue introduced by an amicus rather than by a named party.  *See Citizens

27  Against Casino Gambling v. Kempthorne*, 471 F. Supp. 2d 295, 312 (W.D.N.Y. 2007) (granting

28  /////

1   amicus curiae's request for judicial notice of Rule 19 dismissal argument despite the fact that "no

2   party had raised the issue").

3           Here, the Tribe's actions do not rise to "litigating amicus" status.  The Tribe has

4   not removed this action from state court, filed pleadings, sought to compel discovery, *Michigan*,

5   940 F.2d at 163, or attempted any other action to "effectively control the future course of the

6   proceedings," *id.* at 166.  As noted, the Tribe is not barred from filing a request for judicial notice

7   as an amicus.  Unlike *NGV Gaming*, the Tribe has not moved to file an opposition to a motion or

8   any pleadings.  *NGV Gaming*, 355 F. Supp. 2d at 1067–68.  Similarly, the remaining cases relied

9   on by plaintiffs do not involve the waiver of sovereign immunity by an amicus curiae, but rather

10  waiver by a named party.  ECF No. 39 at 2 n.1 (citing *Embury v. King*, 361 F.3d 562 (9th Cir.

11  2004); *State Eng'r of State of Nev. v. S. Fork Band of the Te-Moak Tribe of W. Shoshone Indians*

12  *of Nev.*, 66 F. Supp. 2d 1163, 1173 (D. Nev. 1999), *vacated*, *State Eng'r v. S. Fork Band of the*

13  *Te-Moak Tribe*, 114 F. Supp. 2d 1046 (D. Nev. 2000)).

14          Plaintiffs fail to establish the Tribe's actions amount to those of a "litigating

15  amicus."  The court declines to find a waiver of the Tribe's sovereign immunity.

16  VI.    PLAINTIFFS' REQUEST FOR AN EVIDENTIARY HEARING

17          A.  The Parties' Positions

18          Plaintiffs argue an evidentiary hearing "is necessary to allow sufficient time . . . to

19  conduct and complete discovery and to respond to extrinsic evidence offered in support of

20  Defendants' motions."  ECF No. 27 at 2.  Plaintiffs argue the federal defendants "based their

21  motion on extrinsic evidence" and "did not even provide copies of the documents they reference

22  to support their motion."  *Id.* at 3–4.  Plaintiffs also argue the federal defendants' motion is based

23  on "a factual challenge to the subject matter jurisdiction of the Court," *id.* at 3, and seek an

24  opportunity "to collect the extrinsic evidence . . . and to discover and obtain evidence that can be

25  offered in response," *id.* at 6.  Plaintiffs argue defendant Hunter joined the federal defendants'

26  motion to dismiss "[s]o all the extrinsic documents listed . . . with respect to the Federal

27  Defendants' motion were also proffered in support of Defendant Hunter's motion to dismiss."  *Id.*

28  at 5.  Finally, plaintiffs state in a conclusory fashion the Tribe's request for judicial notice

1   contains twenty-four separate documents and "[a]ll of the extrinsic documents, and related

2   documents, . . . should be produced to the Plaintiffs."[4]  *Id.*

3          The federal defendants disagree with plaintiffs' characterization of their motion to

4   dismiss as a speaking motion, arguing their motion is legal in nature and "[t]he threshold legal

5   questions pending before the Court in the motion . . . are whether this Court has subject matter

6   jurisdiction and whether the Tribe must be part of this lawsuit in order for it to proceed."  ECF

7   No. 29 at 3–4.  The federal defendants further argue the documents referenced in their motion

8   "are cited within the factual background section of the motion, and they are not documents on

9   which [the Federal] Defendants rely in support of their arguments the Court lacks subject matter

10  jurisdiction to review and resolve this dispute."  *Id.* at 4.  The federal defendants also point out

11  one document they refer to was submitted by plaintiffs with their original complaint and many

12  others are matters of public record.  *Id.* at 4–5.

13         Defendant Hunter also opposes plaintiffs' application, arguing his motion to

14  dismiss is not a speaking motion.  ECF No. 28 at 3.  He says his motion sets forth two arguments,

15  neither of which rely on extrinsic evidence:  plaintiffs fail to state a claim upon which relief can

16  be granted and he is entitled to tribal sovereign immunity.  *Id.* at 3–4.  Hunter further argues

17  plaintiffs mischaracterize the federal defendants' motion to dismiss and the referenced documents

18  "are either already in plaintiffs' possession, in the public record, were cited in plaintiffs' own

19  complaints here, or are relevant for background but not essential to the Court's adjudication of the

20  pending motions to dismiss."  *Id.* at 4–11.  Finally, Hunter argues discovery should not be

21  permitted until the threshold question of sovereign immunity is addressed.  *Id.* at 11–13.

22         B.  Legal Standards

23         Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to

24  challenge a complaint for "lack of subject-matter jurisdiction."  "A motion to dismiss for lack of

25  subject matter jurisdiction may either attack the allegations of the complaint or may be made as a

26  'speaking motion' attacking the existence of subject matter jurisdiction in fact."  *Thornhill Publ'g*

27  ────────────────────

28         [4] Plaintiffs' claim regarding the Tribe's request for judicial notice is partially mooted in
    light of the court's denial of the Tribe's request for judicial notice of Exhibit Nos. 13–24.

1    *Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).  In a facial attack, the

2    complaint is challenged as failing to establish federal jurisdiction, even assuming all the

3    allegations are true and construing the complaint in the light most favorable to plaintiff.  *See Safe*

4    *Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  By contrast, in a factual attack,

5    the challenger provides evidence that an alleged fact is false, or a necessary jurisdictional fact is

6    absent, resulting in a lack of subject matter jurisdiction.  *Id.*  In these circumstances, the

7    allegations are not presumed to be true and "the district court is not restricted to the face of the

8    pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual

9    disputes concerning the existence of jurisdiction."  *McCarthy v. United States*, 850 F.2d 558, 560

10   (9th Cir. 1988).  "Once the moving party has converted the motion to dismiss into a factual

11   motion by presenting affidavits or other evidence properly brought before the court, the party

12   opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of

13   establishing subject matter jurisdiction."  *Savage v. Glendale Union High Sch.*, 343 F.3d 1036,

14   1040 n.2 (9th Cir. 2003).

15                  In the Ninth Circuit, "[d]iscovery may be appropriately granted where pertinent

16   facts bearing on the question of jurisdiction are controverted or where a more satisfactory

17   showing of the facts is necessary."  *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008)

18   (internal quotations and citation omitted).  On the other hand, a trial court may deny jurisdictional

19   discovery "'when it is clear that further discovery would not demonstrate facts sufficient to

20   constitute a basis for jurisdiction,'" *Am. W. Airlines, Inc. v. GPA Group, Ltd.*, 877 F.2d 793, 801

21   (9th Cir. 1989) (quoting *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24

22   (9th Cir. 1977)), or where the request for discovery is "based on little more than a hunch that it

23   might yield jurisdictionally relevant facts," *Boschetto*, 539 F.3d at 1020 (citing *Butcher's Union*

24   *Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986)), *see, e.g.*, *Breakthrough*

25   *Mgmt. Group, Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1188–91 (10th Cir.

26   2010) (affirming district court's denial of request for jurisdictional discovery with regard to a

27   Rule 12(b)(1) speaking motion on the issue of tribal sovereign immunity because the plaintiff

28   "failed to convince [the court] of its legal entitlement to jurisdictional discovery").

1    C.  Analysis

2          First, with regard to the Tribe, the documents submitted with their request for

3    judicial notice were provided to the court and the parties, including plaintiffs, on April 25, 2013.

4    *See* ECF Nos. 22-2 to 22-7.  Accordingly, plaintiffs' request to conduct discovery of these

5    documents is DENIED as moot.

6          Second, with regard to defendant Hunter, notwithstanding his joinder in the federal

7    defendants' motion to dismiss, it does not necessarily follow he offers the same documents in

8    support of his motion to dismiss.  Here, plaintiffs fail to point to any extrinsic evidence offered in

9    support of defendant Hunter's motion to dismiss or state what facts need to be further developed

10   with regard to his motion.  Plaintiffs' request for an evidentiary hearing as to defendant Hunter's

11   motion to dismiss is DENIED.

12         Lastly, with regard to the federal defendants' motion to dismiss, plaintiffs request

13   permission to conduct discovery to obtain seven documents referenced in the motion and an

14   evidentiary hearing on defendants' jurisdictional challenge.[5]  ECF No. 27 at 4.  Whether the

15   federal defendants' subject matter jurisdiction challenge is a facial or a factual attack, plaintiffs'

16   argument fails.  The seven documents are either easily discoverable by plaintiffs or irrelevant to

17   the court's analysis of the motions to dismiss.  For example, plaintiffs argue the federal

18   defendants failed to provide a copy of the Jamul Indian Village Constitution, but the document

19   was attached to plaintiffs' original complaint and plainly in plaintiffs' possession.  *See* ECF

20   No. 1-1, Ex. G.  Similarly, plaintiffs argue the federal defendants failed to provide copies of the

21   "*Rosales* litigation."  ECF No. 27 at 4.  However, the federal defendants provide citations to each

22   of the referenced actions.  As the federal defendants also point out, the documents are referred to

23   as background and are not material to the issues raised in their motion to dismiss.

24         Plaintiffs fail to set forth any argument establishing what facts they seek to

25   develop through discovery and an evidentiary hearing, or why any one of the documents

26   _____

27         [5] Plaintiffs also state three "key documents" were "mentioned" in the federal defendants'
     prior motion to dismiss and deleted in the motion to dismiss currently before the court.  ECF No.
     27 at 4.  Because the federal defendants did not refer to these three documents in the operative
28   motion to dismiss, this point is misdirected.

referenced by the federal defendants is directly relevant to the motions at issue. Plaintiffs'

conclusory belief discovery will enable them to demonstrate subject matter jurisdiction is not

sufficient for the court to grant jurisdictional discovery or an evidentiary hearing. *Butcher's*

*Union*, 788 F.2d at 540. The court finds "further discovery would not demonstrate facts sufficient

to constitute a basis for jurisdiction," *Am. W. Airlines, Inc.*, 877 F.2d at 801, nor will it aid in

resolving the issues before the court.

Even assuming *arguendo* plaintiffs overcame the barriers discussed above, an

evidentiary hearing is unnecessary at this juncture in light of the court's findings, which do not

reach the federal defendants' subject matter jurisdiction challenge. Nevertheless, the court

remains cognizant of the possibility of an evidentiary hearing being necessary in the future,

provided the factors discussed above are met.

Accordingly, plaintiffs' request for an evidentiary hearing with regard to the

federal defendants' motion to dismiss is DENIED without prejudice.

VII.    DEFENDANT HUNTER'S MOTION TO DISMISS

Defendant Hunter moves to dismiss for lack of subject matter jurisdiction based on

his position as the Tribe's Chairman and failure to state a claim upon which relief can be granted.

ECF No. 23.

A. Subject Matter Jurisdiction

Defendant Hunter argues he is entitled to tribal sovereign immunity because "[t]he

relief Plaintiffs seek here would clearly 'interfere with the [Tribe's] public administration' of its

Indian lands . . . ." ECF No. 23 at 14 (quoting *Shermoen v. United States*, 982 F.2d 1312, 1320

(9th Cir. 1992)). Defendant Hunter continues, "[p]laintiffs' requested judgment declaring that the

Tribe's lands are 'held in fee' and not 'in trust for the JIV' and that they are subject to 'State and

local taxation and regulation,' FAC Prayer for Relief, ¶ E, would clearly 'restrain the [Tribal]

Government from acting' with respect to those lands." *Id.* (quoting *Shermoen*, 982 F.2d at 1320).

In reply, plaintiffs argue "the *Ex Parte Young* doctrine 'permits actions for

prospective non-monetary relief against State or tribal officials in their official capacity to enjoin

them from violating federal law, without the presence of the immune State or tribe.'" ECF No.

18

1    30 at 7 (quoting *Salt River Project Agr. Imp. & Power Dist. v. Lee*, 672 F.3d 1176, 1181 (9th Cir.

2    2012)).  Plaintiffs further argue defendant Hunter is named "as Chairman of [the Tribe] for

3    prospective declaratory and injunctive relief and to enjoin the continued construction of an illegal

4    casino on the property in violation of federal law" and defendant Hunter, "like the tribal officials

5    in *Salt River Project*, has acted 'beyond [his] jurisdiction, without basis in law, and in violation of

6    federal law.'"  *Id.* at 7 (quoting *Lee*, 672 F.3d at 1181) (alterations in original).  Plaintiffs

7    conclude that, "[a]ssuming [the Tribe's] sovereign immunity claim has merit, then it was

8    appropriate to name [defendant] Hunter as a representative defendant for [the Tribe]."  *Id.* at 8.

9             i.    Legal Standards

10             Indian tribes enjoy sovereign immunity absent an express waiver or federal statute

11   to the contrary.  *United States v. Oregon*, 657 F.2d 1009, 1012–13 (9th Cir. 1981).  "Tribal

12   sovereign immunity 'extends to tribal officials when acting in their official capacity and within

13   the scope of their authority.'"  *Cook v. AVI Casino Enterprises, Inc.*, 548 F.3d 718, 727 (9th Cir.

14   2008) (quoting *Linneen v. Gila River Indian Community*, 276 F.3d 489, 492 (9th Cir. 2002)).  "In

15   these cases the sovereign entity is the 'real, substantial party in interest and is entitled to invoke

16   its sovereign immunity from suit even though individual officials are nominal defendants.'"  *Id.*

17   (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)).  "[A] plaintiff cannot

18   circumvent tribal immunity 'by the simple expedient of naming an officer of the Tribe as a

19   defendant, rather than the sovereign entity.'"  *Id.* (quoting *Snow v. Quinault Indian Nation*, 709

20   F.2d 1319, 1322 (9th Cir. 1983)).  Tribal sovereign immunity does not protect an official against

21   individual-capacity claims.  *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 59 (1978).

22            ii.   Analysis

23             To the extent plaintiffs bring this action against defendant Hunter in his individual

24   capacity, the allegations in the first amended complaint suggest he is entitled to tribal sovereign

25   immunity because initiating construction of the Tribe's casino presumably falls under the

26   chairman's duties in his representative capacity rather than his individual capacity.  *See*, *e.g.*,

27   *Miller v. Wright*, 705 F.3d 919, 927–28 (9th Cir. 2012) (finding tribal officials protected by

28   Tribe's sovereign immunity because they were acting pursuant to Tribe's authority "when they

1    taxed transactions occurring on the reservation" (citing *Cook*, 548 F.3d at 727; *Washington v.*
2    *Confederated Tribes of Colville Indian Reservation*, 447 U.S. 134, 152 (1980))).  Indeed, the first
3    amended complaint supports a finding defendant Hunter was acting in his official capacity and
4    within the scope of his authority when he initiated construction of the Tribe's casino.  *See* FAC
5    ¶ 21 (naming defendant Hunter "in his official capacity as an adequate representative" of the
6    Tribe); *see also id.* ¶ 88 (alleging "if the NIGC's decision as to the Parcel's qualification for
7    gambling is allowed to stand, [the Tribe] will likely build and operate a casino on the Parcel . . .
8    [i]n fact, construction on the casino has already been initiated"); *id.* ¶ 89 (alleging "Plaintiffs will
9    be disproportionately affected if [the Tribe] is allowed to follow through with its plans to build a
10   203,000-square foot casino complex . . .").  Plaintiffs fail to allege any facts showing defendant
11   Hunter acted individually and not in his representative capacity as chairman of the Tribe.

12           With regard to plaintiffs' argument, *Ex Parte Young* permits an action against
13   defendant Hunter, this argument fails.  *See* 209 U.S. 123 (1908). In this action, plaintiffs allege
14   the federal defendants violated federal law by issuing a final agency action that declares the Tribe
15   has Indian lands that qualify for gambling under IGRA.  Plaintiffs allege defendant Hunter, as an
16   adequate representative of the Tribe, FAC ¶ 21, initiated construction of the casino "as a result
17   of" the lands determination, *id.* ¶ 7.  However, as discussed below, plaintiffs fail to make a claim
18   that defendant Hunter violated federal law when he initiated construction on the casino.  "[T]he
19   *Ex parte Young* doctrine is a *narrow* exception . . . [that] allows government officials to be sued
20   in their official capacity for violating federal law." *Timbisha Shoshone Tribe v. U.S. Dept. of the*
21   *Interior*, 290 F.R.D. 589, 596 (E.D. Cal. 2013) (alteration in original).  Because plaintiffs do not
22   allege defendant Hunter violated federal law, he retains his immunity from suit as a tribal official.
23   *Id.*

24           B.  Failure to State a Claim

25           Notwithstanding his assertion of tribal sovereign immunity, defendant Hunter
26   argues in the alternative that plaintiffs fail to set forth any substantive allegations of wrongdoing
27   on his part.  ECF No. 23 at 15.  Defendant Hunter argues the first amended complaint fails to
28   allege he committed a legal wrong or link his actions to any wrong that would entitle plaintiffs to

1   redress.  *Id.*  In opposition, plaintiffs argue they sought declaratory and injunctive relief against

2   all defendants, including Hunter.  ECF No. 30 at 3.  Further, plaintiffs argue the first amended

3   complaint contains specific allegations against Hunter "regarding the illegal initiation of

4   construction of casino [sic] on the site."  *Id.*  In reply, Hunter reiterates he "is not alleged to have

5   taken any action at all with respect to this claim."  ECF No. 36 at 12–14.  Plaintiffs clarified

6   during oral argument the allegations regarding defendant Hunter pertain to the initiation of

7   construction on land that does not qualify as Indian lands.  *See* FAC ¶ 7.

8             i.    Legal Standards

9             Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to

10  dismiss a complaint for "failure to state a claim upon which relief can be granted."  A court may

11  dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged

12  under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

13  1990).

14            Although a complaint need contain only "a short and plain statement of the claim

15  showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), in order to survive a motion

16  to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a

17  claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

18  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include something

19  more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and

20  conclusions' or 'a formulaic recitation of the elements of a cause of action.'"  *Id.* (quoting

21  *Twombly*, 550 U.S. at 555).  Determining whether a complaint will survive a motion to dismiss

22  for failure to state a claim is a "context-specific task that requires the reviewing court to draw on

23  its judicial experience and common sense."  *Id.* at 679.  Ultimately, the inquiry focuses on the

24  interplay between the factual allegations of the complaint and the dispositive issues of law in the

25  action.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

26            In making this context-specific evaluation, this court must construe the complaint

27  in the light most favorable to the plaintiff and accept as true the factual allegations of the

28  complaint.  *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007).  This rule does not apply to "'a legal

conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986) *quoted in Twombly*, 550 U.S. at 555, nor to "allegations that contradict matters properly subject to judicial notice" or to material attached to or incorporated by reference into the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A court's consideration of documents attached to a complaint or incorporated by reference or matter of judicial notice will not convert a motion to dismiss into a motion for summary judgment.  *Ritchie*, 342 F.3d at 907–08; *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *compare Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (noting that even though court may look beyond pleadings on motion to dismiss, generally court is limited to face of the complaint on 12(b)(6) motion).

             ii.    Analysis

         To the extent plaintiffs allege a claim against defendant Hunter in his individual capacity, plaintiffs do not allege sufficient facts to support a claim against defendant Hunter.  The gravamen of plaintiffs' first amended complaint is that a final agency action was purportedly issued declaring the Tribe has Indian lands that qualify for gambling under IGRA in violation of federal law.  The first amended complaint fails to specify Hunter's involvement in the NOI or the lands determination; or how he violated the IRA, IGRA or NEPA.

         Plaintiffs clarified during the hearing the allegations against Hunter involve his approval of construction on the parcel at issue and are unrelated to their APA action against the federal defendants.  However, plaintiffs allege the lands determination in the NOI "triggered" construction on the parcel, FAC ¶¶ 8, 14, which suggests Hunter's alleged actions are not unrelated to plaintiffs' APA action.  That Hunter's actions are a result of the federal defendants' alleged violation of a federal law is not a sufficient allegation against Hunter to survive a motion to dismiss.

         Moreover, plaintiffs' allegations regarding construction are problematic considering plaintiffs bring this action under the APA, and the alleged Indian Lands Determination is contained in an NOI that specifically addresses approval of a gaming management contract, not a construction contract.  78 Fed. Reg. 21398–01.  While plaintiffs

clarified during the hearing their position that the initiation of construction violates federal law because the construction is on land that does not qualify as Indian land, *see* FAC ¶ 7, this allegation does not sufficiently allege a separate violation apart from the APA action such that it is an independent allegation of a violation of federal law by Hunter.  Accordingly, plaintiffs fail to allege how Hunter's approval of the construction somehow violates a federal law and is actionable apart from their APA action against the federal defendants.

Accordingly, defendant Hunter's motion to dismiss is GRANTED with leave to amend.

## VIII.   FEDERAL DEFENDANTS' MOTION TO DISMISS

In their motion to dismiss, the federal defendants set forth five separate arguments in support of dismissal of plaintiffs' complaint against them: (1) the NIGC's notice of intent is not a final agency action; (2) plaintiffs' claims are not ripe for judicial review; (3) plaintiffs lack standing to assert their claims; (4) plaintiffs' claims regarding the status of the Jamul Indian Village as a tribe are filed beyond the statute of limitations; and (5) in the absence of a valid APA action, plaintiffs' first amended complaint should be dismissed for failure to join the Tribe.  ECF No. 21 at 17–29.  The fifth argument is dispositive in light of the court's determination plaintiffs fail to state a claim against defendant Hunter; therefore, the court will not address the remaining arguments.  For the reasons discussed below, the court finds the Tribe is a required party under Rule 19 of the Federal Rules of Civil Procedure and grants the federal defendants' motion to dismiss with leave to amend.

Notwithstanding their position the NOI is not a final agency action,[6] the federal defendants argue "[t]o the extent the gravamen of the amended complaint is a challenge to the Tribe's beneficial ownership of, and jurisdiction over, its reservation . . . Plaintiffs are striking at the heart of legally protected interests of a party not before the Court."  ECF No. 21 at 28.  The federal defendants argue plaintiffs' "attempt to address their failure to join the Tribe by naming" defendant Hunter as an adequate representative of the Tribe is "unavailing" in light of their failure

---

[6] The court does not decide at this stage whether the NOI is a final agency action for the purpose of subject matter jurisdiction.  As discussed during the hearing, plaintiffs may address defendants' challenges in any second amended complaint.

1   to allege facts concerning any actions taken by him. *Id.* at 29.  In support of defendants' motions

2   to dismiss, the Tribe argues it has a "fundamental sovereign interested [sic] in its beneficial

3   ownership of, and governmental authority over, the federal trust lands" at issue in this action.

4   ECF No. 22-1 at 22.  The Tribe further argues the relief sought by plaintiffs, if granted, "could

5   result in the invalidation or modification of one of its ordinances, namely, its federally approved

6   gaming ordinance," and jeopardize its Tribal-State compact with the State of California and its

7   contract with its business development partner. *Id.*

8          Plaintiffs oppose, arguing that *Ex parte Young*, permits an action against defendant

9   Hunter and the Tribe is therefore not a necessary party.  ECF No. 31 at 15.  Plaintiffs argue

10  Hunter, "like the tribal officials in *Salt River Project*, has acted 'beyond [his] jurisdiction, without

11  basis in law, and in violation of federal law.'" *Id.*at 16 (quoting *Lee*, 672 F.3d at 1181)

12  (alterations original).

13         A.  Legal Standards

14         A party may bring a Rule 12(b)(7) motion to dismiss for failure to join a required

15  party under Rule 19.  FED. R. CIV. P. 19[7]; *Confederated Tribes of Chehalis Indian Reservation v.*

16  *Lujan*, 928 F.2d 1496, 1498 (9th Cir. 1991).  The court must first determine whether a party is

17  "necessary" to the adjudication of the case. *Confederated Tribes*, 928 F.2d at 1498.  If a party is

18  necessary, the court must determine whether it is feasible to join that party. *Id.*  Only if a

19  necessary party cannot be joined does the court go on to inquire into whether that party is a

20  required party. *Id.*  If a required party cannot be joined, the action must be dismissed. *Id.*

21         Whether a party is necessary to the adjudication of the case is a fact-specific

22  inquiry. *Bakia v. Cnty. of L.A.*, 687 F.2d 299, 301 (9th Cir. 1982).  The Ninth Circuit has

23  explained: "First, the court must consider if complete relief is possible among those parties

24  already in the action.  Second, the court must consider whether the absent party has a legally

25  protected interest in the outcome of the action." *Confederated Tribes*, 928 F.2d at 1498 (citing

26  *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990)).

---

27      [7] "Following stylistic amendments enacted in 2007, Federal Rule of Civil Procedure 19 no
longer refers to 'indispensable' parties, but instead uses the term 'required party.'" *Alto v. Black*,
28  738 F.3d 1111, 1118 n.6 (9th Cir. 2013).

1    B.  Analysis

2    The Tribe is a necessary party to this action because it has an interest in how the

3    NOI is interpreted with regard to the land at issue.  The Tribe has a legal interest in the

4    reservation as explained in its amicus brief, which outlines the Tribe's prior efforts to protect its

5    interest through similar litigation involving opposition to development of the parcel into a gaming

6    facility.  ECF No. 22-1.  Further, judgment in favor of plaintiffs would not be binding on the

7    Tribe, which could continue to assert sovereign powers over the reservation, and may subject the

8    federal defendants and the Tribe "to substantial risk of multiple or inconsistent legal obligations."

9    *Confederated Tribes*, 928 F.2d at 1498.

10    Next, the court must determine whether it is feasible to join the Tribe.

11    *Confederated Tribes*, 928 F.2d at 1498.  Here, the court has determined the Tribe is entitled to

12    tribal sovereign immunity and has not waived its immunity by filing an amicus brief or requesting

13    judicial notice.  Thus, it is not feasible to join the Tribe in this action.

14    Because the Tribe is a sovereign entity and "immune from nonconsensual actions

15    in state or federal court," the court must determine whether the Tribe is a required party "so that

16    the action cannot in equity and good conscience proceed in its absence."  *Confederated Tribes*,

17    928 F.2d at 1499 (internal quotations omitted) (quoting Fed. R. Civ. P. 19(a)); *Alto*, 738 F.3d at

18    1125.  Rule 19(b) provides the factors to be considered in determining whether an action should

19    be dismissed because a required party cannot be joined:

20    
21    
22    
23    
24    

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

25    Fed. R. Civ. P. 19(b); *see also Makah Indian Tribe*, 910 F.2d at 560.

26    The first factor in the Rule 19(b) analysis, prejudice to either existing or absent

27    parties, is essentially the same as the legal interest test under Rule 19(a).  *See Quileute Indian*

28    *Tribe v. Babbitt*, 18 F.3d 1456, 1460 (9th Cir. 1994); *Confederated Tribes*, 928 F.2d at 1499; *see*

25

1   *also Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1024–25 (9th Cir. 2002) ("Not

2   surprisingly, the first factor of prejudice, insofar as it focuses on the absent party, largely

3   duplicates the consideration that made a party necessary under Rule 19(a)."). For the reasons

4   discussed above, the court finds the first prejudice prong of Rule 19(b) weighs in favor of

5   dismissal.

6          With regard to the second factor under Rule 19(b), it is not possible to lessen or

7   avoid prejudice to the Tribe. Plaintiffs seek a judgment declaring, *inter alia*, "the [Indian Lands

8   Determination] that the Parcel is reservation or Indian lands eligible for tribal gaming is arbitrary,

9   capricious, and contrary to law" and "the Defendants have no authority to take the Parcel." FAC

10  at 44–45. Such a judgment would affect the Tribe's interest in and ability to enter into contracts

11  involving the reservation at issue. There is no way to lessen this prejudice absent joining the

12  Tribe. To the extent plaintiffs argue defendant Hunter is an adequate representative of the Tribe,

13  this argument fails. Plaintiffs' reliance on *Lee* and *Ex parte Young* for the proposition defendant

14  Hunter "is an appropriate defendant" to represent the Tribe's interests in this case is unavailing.

15  The *Ex parte Young* doctrine "permits actions for prospective non-monetary relief against state or

16  tribal officials in their official capacity to enjoin them from violating federal law, without the

17  presence of the immune State or tribe." *Lee*, 672 F.3d at 1181. In other words, in cases where

18  courts found Tribal officials were not immune, the officials themselves engaged in acts that

19  violated federal law. *See id.* at 1181–82 (finding tribal officials did not have immunity from a

20  suit, which alleged they violated federal common law by violating the terms of a lease). As noted

21  above, plaintiffs fail to state a claim upon which relief can be granted against defendant Hunter.

22  Absent allegations Hunter violated a federal law, he cannot be named for the sole purpose of

23  representing the tribe because he is entitled to tribal sovereign immunity as the Tribe's chairman.

24  *Oregon*, 657 F.2d at 1012–13 & n.8 ("This immunity also extends to tribal officials when acting

25  in their official capacity and within their scope of authority."); *Lee*, 672 F.3d at 1181. This factor

26  weighs in favor of dismissal.

27          With regard to the third factor, a judgment rendered in the Tribe's absence would

28  not be adequate. *See Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 111

1  (1968) ("We read the Rule's third criterion, whether the judgment issued in the absence of the

2  nonjoined person will be 'adequate,' to refer to this public stake in settling disputes by wholes,

3  whenever possible, for clearly the plaintiff, who himself chose both the forum and the parties

4  defendant, will not be heard to complain about the sufficiency of the relief obtainable against

5  them.").  A judgment in this action would not be complete considering the Tribe would continue

6  to assert its interests over the reservation, which might involve further litigation of the issues.

7  This factor weighs in favor of dismissal.

8         Finally, with regard to the fourth factor, plaintiffs will not have an alternate forum

9  for their claim following dismissal.  However, the "lack of an alternative forum does not

10  automatically prevent dismissal of a suit." *Makah Indian Tribe*, 910 F.2d at 560.  The Ninth

11  Circuit has explained "[c]ourts have recognized that a plaintiff's interest in litigating a claim may

12  be outweighed by a tribe's interest in maintaining its sovereign immunity." *Confederated Tribes*,

13  928 F.2d at 1500 (quotations omitted); *see also Enter. Mgmt. Consultants, Inc. v. U.S. ex rel.*

14  *Hodel*, 883 F.2d 890, 894 (10th Cir. 1989) ("dismissal turns on the fact that society has

15  consciously opted to shield Indian tribes from suit without congressional or tribal consent.")

16  (quotations omitted)).  This standard is consistently followed by the Ninth Circuit.  *See Am.*

17  *Greyhound Racing*, 305 F.3d at 1025 ("[W]e have regularly held that the tribal interest in

18  immunity overcomes the lack of an alternative remedy or forum for the plaintiffs.").  The court

19  finds, in this action, the Tribe's interest in sovereign immunity outweighs the lack of an

20  alternative forum and this factor weighs in favor of dismissal.

21         Accordingly, the federal defendants' motion to dismiss is GRANTED and

22  plaintiffs' claims against these defendants are dismissed without prejudice for failure to join a

23  required party.

24  IX.    PLAINTIFFS' MOTION TO AMEND

25         Following the court's May 23, 2014 hearing on defendants' motions to dismiss

26  and the Tribe's motion for leave to file an amicus curiae brief and request for judicial notice,

27  plaintiffs moved the court for leave to file a second amended complaint.  ECF No. 42.

28

After carefully reviewing plaintiffs' proposed second amended complaint,[8] the court finds it fails to address the deficiencies explained in this order. Moreover, the court in this order is allowing leave to amend. Accordingly, plaintiffs' motion to amend is DENIED as moot.

X.      CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.  The Jamul Indian Village's Motion to File Amicus Brief, ECF No. 22, is GRANTED;

2.  The Jamul Indian Village's Request for Judicial Notice, ECF No. 22-1, is GRANTED IN PART AND DENIED IN PART as set forth above;

3.  Plaintiffs' Request for an Evidentiary Hearing, ECF No. 27, is DENIED;

4.  Defendant Hunter's Motion to Dismiss, ECF No. 23, is GRANTED with leave to amend;

5.  The federal defendants' Motion to Dismiss, ECF No. 21, is GRANTED with leave to amend;

6.  Plaintiffs' Motion to Amend, ECF No. 42, is DENIED; and

7.  Plaintiffs shall file a second amended complaint within twenty-one days from the filed date of this order.

DATED:  August 4, 2014.

_____
UNITED STATES DISTRICT JUDGE

---

[8] On July 25, 2014, plaintiffs filed a document styled as a corrected proposed second amended complaint that does not contain the exhibits referenced in the document. ECF No. 49. The court will not consider plaintiffs' corrected proposed second amended complaint as it fails to comply with Local Rule 220, which requires an amended complaint be complete in itself without reference to any prior pleading.

28