1   KENNETH R. WILLIAMS, State Bar No. 73170
    Attorney at Law
2   980 9th Street, 16th Floor
    Sacramento, CA 95814
3   Telephone:  (916) 543-2918

4   *Attorney for Plaintiffs*
    *Jamul Action Committee, Jamul Community Church,*
5   *Darla Kasmedo, Paul Scripps, Glen Revell and*
    *William Hendrix*

6

7

8                 IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10  **JAMUL ACTION COMMITTEE, JAMUL**
    **COMMUNITY CHURCH, DARLA**              Case No. 2:13-cv-01920 KJM-KLN
11  **KASMEDO, PAUL SCRIPPS, GLEN**
    **REVELL and WILLIAM HENDRIX,**          **SECOND  AMENDED AND**
12                                           **SUPPLEMENTAL COMPLAINT FOR**
                                             **DECLARATORY AND INJUNCTIVE**
                        Plaintiffs,          **RELIEF**
13
            v.
14
    **TRACIE STEVENS, Chairwoman of the**
15  **National Indian Gaming Commission;**
    **JONODEV CHAUDHURI, Acting**
16  **Chairman of the National Indian Gaming**
    **Commission; DAWN HOULE, Chief of**
17  **Staff for the National Indian Gaming**
    **Commission; SALLY JEWELL, Secretary**
18  **of the U.S. Department of the Interior,**
    **KEVIN WASHBURN, Assistant Secretary –**
19  **Indian Affairs; PAULA L. HART, Director**
    **of the Office of Indian Gaming, BIA; AMY**
20  **DUTSCHKE, Regional Director, BIA;**
    **JOHN RYDZIK, Chief, Environmental**
21  **Division, BIA; U.S. DEPARTMENT OF**
    **THE INTERIOR; NATIONAL INDIAN**
22  **GAMING COMMISSION; RAYMOND**
    **HUNTER; CHARLENE CHAMBERLAIN;**
23  **ROBERT MESA; RICHARD TELLOW;**
    **JULIA LOTTA; PENN NATIONAL, INC.;**
24  **SAN DIEGO GAMING VILLAGE, LLC.;**
    **and C.W.DRIVER INC.**
25
                        **Defendants.**
26

27       Plaintiffs file this Second Amended and Supplemental Complaint for Declaratory and

28  Injunctive Relief against Defendants, and each of them, and allege as follows:

                                      1

## NATURE OF THE ACTION

1. Plaintiffs challenge the attempts by the Defendants to approve, facilitate, allow and build an illegal Indian gambling casino on a 4.66 acre parcel (Parcel) in the small rural community of Jamul near San Diego, California. The casino is being built by the Jamul Indian Village (JIV) on property owned by the United States. The proposed Indian casino is illegal because it is being constructed on land that is not eligible for gambling under the Indian Gaming Regulatory Act (IGRA).  Plaintiffs seek a declaration that Defendants' actions violate federal and California law and an injunction against the continued construction of the illegal casino.

2. This lawsuit was triggered by the National Indian Gaming Commission's (NIGC) declaration that the JIV has a Reservation that qualifies as "Indian lands" eligible for gambling under IGRA. This Indian lands determination (ILD) was first included in the "PUBLIC NOTICE: Notice of Intent to Prepare a Supplemental Environmental Impact Statement for the Approval of a Gaming Management Contract" issued by the NIGC on April 4, 2013.

3. On April 5, 2013, the JIV, based on the ILD, applied to the NIGC for approval of the Jamul Indian Village Gaming Ordinance (No. 2013-05.)   The NIGC approved the JIV Gaming Ordinance for the supposed JIV Reservation on July 1, 2013.

4. Also on April 5, 2013, the JIV, with Penn National, based on the ILD, applied to the NIGC for approval of a Gaming Management Contract.   The NIGC, without first complying with NEPA, approved the Gaming Management Contract on or about January 5, 2014.

5. The Defendants initiated construction on the illegal casino on or about January 10, 2014.

6. Plaintiffs, by this lawsuit challenge the NIGC ILD, and approval of the JIV Gaming Ordinance and Gaming Management Contracts and the continued construction of an illegal casino on the Parcel by Defendants.  Plaintiffs request that the NIGC's decisions be vacated and that the Defendants be enjoined from constructing an illegal casino on the Parcel.

2

**PARTIES**

**7.**   Plaintiff, JAMUL ACTION COMMITTEE (JAC) is a non-profit organization of citizens living in and around the rural unincorporated town of Jamul, California.  The JAC and its members are dedicated to preserving the small-town rural lifestyle of its community.  JAC's members own homes and operate businesses in the town of Jamul that are being adversely affected by current construction on the Parcel and would be adversely impacted if, as a result of Defendants approvals and actions, a major illegal gambling casino is built on the Parcel.

**8.**  Individual Plaintiffs DARLA KASMEDO, GLEN REVELL, PAUL SCRIPPS and WILLIAM HENDRIX are all members of JAC.  JAC members also include:  Gary L. Classen, Kymm Salmonsen, Andrew Salmonsen, Michael Stalnaker, Randy White, Lisa Darroch, Donald Beers, Roberto Salazar, Marcia Spurgeon, Michael Spurgeon, Donna Hendrix, Peter Shenas, Celeste Shenas, J. Randy Terry, Patty Terry, and Gene Luise Merlino. All JAC members reside in Jamul, California. All of these individuals are adversely affected by current construction activities on the Parcel and will be adversely impacted if, as a result of Defendants' approvals and actions, an illegal Indian casino is constructed on the Parcel.

**9.**   The JAMUL COMMUNITY CHURCH (JCC) is a community based Christian Church located in the town of Jamul.  The JCC and its community are adversely affected by current construction on the Parcel and will be adversely impacted if, as a result Defendants' approvals and actions, an illegal Indian casino is constructed and gambling is allowed on the Parcel.

**10.**  The individual Federal Defendants are employees, officials or appointees of the NIGC, the Department of Interior (DOI), and the Bureau of Indian Affairs (BIA) and include:

    a.    TRACIE STEVENS, Chairwoman of the NIGC,

    b.    SALLY JEWELL, Secretary of the DOI,

    c.    KEVIN WASHBURN, Assistant Secretary of the DOI for Indian Affairs,

3

d.   PAULA L. HART, Director of the Office of Indian Gaming for the BIA,

e.   AMY DUTSCHKE, Regional Director for the Pacific Region of the BIA,

f.   JOHN RYDZIK, Chief of the Environmental Division of the BIA, and

g.    DAWN HOULE, Chief of Staff of the NIGC, and

h.   JONODEV CHAUDHURI, Acting Chairman of the NIGC.

The individual Federal Defendants are being sued in their official capacity for actions and decisions for which they bear the responsibility.   They are also being sued in their personal capacity for allowing and facilitating the construction of an illegal casino on the Parcel in violation of federal and State law including constitutional violations.  Each Defendant has acted, or threatened to act, under the color of federal governmental authority to the injury of Plaintiffs in violation of federal law and in excess of federal limitations upon their power and authority.   *Ex parte Young* (1908) 209 U.S. 123.

**11.**   Defendant, DEPARTMENT OF INTERIOR, is a cabinet level agency of the United States and is the agency responsible for managing the affairs of Indian tribes primarily through the BIA.  The DOI is responsible for insuring compliance with its laws and regulations and for supervising its officials and employees including those in the BIA.

**12.**   Defendant, NATIONAL INDIAN GAMING COMMISSION, is an independent agency that is responsible for making Indian lands determinations and approving gaming ordinances and management contracts under IGRA.  The NIGC is responsible for insuring compliance with its laws and regulations and for supervising their officials and employees.

**13.** Defendants RAYMOND HUNTER, CHARLENE CHAMBERLAIN, ROBERT MESA, RICHARD TELLOW, and JULIA LOTTA are council members or officials of the JIV. They are being sued in their personal capacity for allowing and facilitating the construction of an illegal casino on the Parcel in violation of federal and State law including constitutional

4

violations.  Each of these Defendants has acted, or threatened to act, under the color of JIV governmental authority to the injury of Plaintiffs in violation of federal law and in excess of federal limitations upon their power and authority.  *Ex parte Young*  (1908) 209 U.S. 123; *Michigan v. Bay Mills Indian Community* (S.Ct. No. 12-515; May 27, 2014) and *Salt River Project Agricultural Improvement and Power District v. Lee,* 672 F.3d 1176 (9th Cir. 2012).

**14.** Although not named as a defendant, nor federally recognized as an Indian tribe, the JIV has voluntarily participated in this case as though it was a party.  The JIV filed briefs, motions, opposition to motions and requests for judicial notice in this case which, over Plaintiffs' objections, have been accepted and decided by the Court.  Plaintiffs, by naming the JIV Council Members and Officials, do not concede that the JIV is a federally recognized tribe.

**15.** Defendant PENN NATIONAL, INC. is a corporation doing business in California.  Penn National signed management and development contracts with the JIV, submitted them to the NIGC for approval and is implementing them by constructing or managing the construction of the illegal casino on the Parcel.   Penn National has issued press releases and public statements confirming that they have initiated construction of a casino on the Parcel.

**16.** Defendant SAN DIEGO GAMING VILLAGE, LLC (SDGV) is a corporation doing business in California that was identified by the NIGC in the Notice of Intent to Prepare a Supplemental Environmental Impact Statement (SEIS) for the Approval of a Gaming Management Contract as the corporate entity proposing a gaming management contract with JIV for the management of the illegal casino on the Parcel.

**17.** Defendant C.W.DRIVER is a corporation and contractor doing business in California.  Plaintiffs are informed and believe, and on that basis allege that C.W.DRIVER has been retained by JIV council members, Penn National and/or SDGV to construct, and is currently constructing, the illegal Indian casino on the Parcel.

5

**JURISDICTION AND VENUE**

**18.**  The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331 et. seq, 5 U.S.C. §§ 701-706, 28 U.S.C. §§ 2201-2202,  25 U.S.C. § 2714, and 18 U.S.C. § 1166.

**19.** The United States waived sovereign immunity from suit under 5 U.S.C. §§701-706, 28 U.S.C. §2201(a) and 25 U.S.C. § 2714.  The other Defendants do not have immunity from suit.

**20.** An actual case and controversy exists between the parties, warranting the Court's declaration pursuant to 28 U.S.C. § 2201 of the rights, remedies and relations of the parties with respect to the Parcel and whether or not it qualifies a Indian land eligible for gambling under IGRA.

**21.** All applicable federal administrative remedies have been exhausted prior to initiating this lawsuit against the Federal defendants as required by 5 U.S.C. §704. This action arises under federal law, including IRA, 25 U.S.C. §§ 465 *et. seq.* IGRA, 25 U.S.C. §§ 2700 *et seq.* and 18 U.S.C. § 1166, the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321 *et seq.,* the Native American Grave Protection and Repatriation Act, 25 U.S.C. §§ 3001 et seq., the U.S. Constitution, the California Admissions Act of 1850,  and principles of federalism.

**22.** The NIGC's approval of the ILD on April 4, 2013, the JIV Gaming Ordinance on July 1, 2013, and the JIV-Penn National Gaming Management Contract on or about January 5, 2014, are final agency actions subject to review under IGRA.  25 U.S.C. § 2714.

**23.**  Venue is proper in the District Court for the Eastern District of California under 28 U.S.C. §§ 1391(b) and (e) and 5 U.S.C. § 703.  Venue is proper in this judicial district because at least one defendant resides or has an office in this judicial district, and because a substantial portion of the events giving rise to the Plaintiffs' claims occurred in this district.

**24.** The Plaintiffs have standing to pursue the claims asserted in this complaint.  *Bond v. United States* 131 S.Ct. 2355 (2011), *Match-E-Be-Nash-She-Wish Band v. Patchak* 132 S.Ct. 2199 (2012), and *Michigan v. Bay Mills Indian Community* (S.Ct. No. 12-515; May 27, 2014)

6

1

**LEGAL BACKGROUND**

2

**25.** On September 9, 1850, California was admitted to the Union.  (California Admissions Act; 9

3

Stats. 452 (1850).)  California entered the Union on an "equal footing" with, and with the

4

same public property rights, jurisdiction and regulatory authority, as all other States.

5

**26.** In 1864, Congress passed an Act which stated that no more than four reservations could be

6

established within the State of California.  (13 Stat. 39 (1864).)   The four reservations were

7

Round Valley, Hoopa Valley, Tule River and "Mission."  *Mattz v. Arnett* (1973) 412 U.S.

8

481, 489-491.  The Parcel was not one of the four reservations.

9

**27.** In 1887, Congress passed the General Allotment Act.  (24 Stat. 388 (1887).)  This Act

10

authorized the President to allot portions of reservation lands to individual Indians.  The

11

Jamul Indians did not own reservation land that was subject to the General Allotment Act.

12

**28.** In 1891, Congress provided for the creation of a limited number of additional reservations in

13

California for "Mission" Indians in the Mission Indian Relief Act (MIRA).  (Act of Jan 12,

14

1891, 26 Stat. 212.)  The creation of a Mission Indian reservation required the approval and

15

signature of the Secretary of Interior and the President.  The Parcel was not acquired or

16

created as a Mission Indian reservation. Nor was it approved by the President.

17

**29.** In 1924, Congress conferred citizenship on all Indians born in the United States including the

18

Indians of San Diego County.  (8 U.S.C. § 1401(b).)  And, by reason of the 14th amendment,

19

the grant of federal citizenship had the additional effect of making Indians citizens of the

20

States where they resided.   Citizenship bestows rights and corresponding duties which one is

21

not free to selectively adopt or reject.  Giving governmental preferences and benefits to

22

citizens or groups of citizens based on race is a violation of the federal and State constitutions.

23

Defendants' attempt to confer benefits on the JIV as racial quarter-blood Indian community is

24

an unconstitutional violation of the equal protection and due process rights of Plaintiffs.

25

26

27

28

7

**30.** In 1934, Congress enacted the IRA.  (25 U.S.C. §§ 461 et seq.)  A purpose of the IRA was to reacquire lands within reservations that, pursuant to the General Allotment Act of 1887, were allotted to Indians.  IRA benefits are limited by its terms to recognized tribes under federal jurisdiction in 1934. *Carcieri v. Salazar* 132 S.Ct. 1058 (2009).  The Jamul Indians were not a recognized tribe under federal jurisdiction in 1934.  Nor were they on the list of 258 federally recognized tribes that existed in 1934.   Nor was any land owned by Jamul Indians subject to the 1887 General Allotment Act that was remedied by the IRA in 1934.

**31.** In 1978 the DOI adopted regulations outlining 'Procedures for Establishing that an American Indian Group Exists as an Indian Tribe.'  These procedures are currently codified at 25 C.F.R. §§ 83.1-83.13.

**32.** The JIV has not filed a Part 83 petition to become a federally recognized tribe.  Nor could the JIV meet the requirements of Part 83.  As a general matter, to obtain federal recognition, a tribe must demonstrate that it's "membership consists of individuals who descend from a historical Indian tribe or from historical Indian tribes which combined and functioned as a single autonomous political entity." (25 C.F.R. §83.7(3).)  The JIVwas never a body politic that continued without interruption since time immemorial, never had powers of inherent sovereignty, and was not a single identifiable group that historically governed itself or functioned as a single autonomous political entity.

**33.** In the 1970's representatives of the JIV asked the BIA how it could obtain federal recognition.  The BIA told the JIV that the only avenues to obtain federal recognition were through an Act of Congress or the Part 83 process.  In the alternative, the BIA told JIV that they could organize themselves as a half-blood Indian organization under the Section 19 of the IRA.  It was pointed out to the JIV that federal recognition under Part 83 and of organizing as a half-blood Indian community under Section 19 are two different things. In order for the JIV to

8

become a federally recognized tribe under Part 83 it would have to submit a detailed petition and undergo a lengthy process of consideration. Several years would have been required to complete this.  In 1981the JIV opted to organize themselves as a Section 19 half-blood Indian community and not to pursue the Part 83 federal recognition process even though they knew the significant limitations if they organized themselves as a half-blood Indian community.

**34.** In 1980, the DOI adopted regulations for "the acquisition of land by the United States in trust status for individual Indians and Indian tribes." (45 Fed. Reg. 62034-62037; September 5, 1980.) These regulations are currently codified at 25 C.F.R. §§ 151.1 – 151.15.  Trust acquisitions must be authorized by an Act of Congress and must be approved by the Secretary of Interior and published in the Federal Register for thirty days to be effective.  25 C.F.R. §§ 151.3 and 151.12 (b).  The Parcel has not been taken into trust by the Secretary of Interior.

**35.** In 1988, Congress enacted the Indian Gaming Regulatory Act.  (Pub. Law 100-497; 25 U.S.C §§ 2701 et seq.)  Under IGRA "Indian lands" eligible for gaming are limited to: (1) lands within a reservation or (2) trust land or restricted Indian lands over which a tribe exercises governmental control.  (25 U.S.C. § 2703(4)(A)&(B).)  The Parcel is neither trust land, restricted Indian land nor reservation land and, therefore, is not eligible for an Indian casino under IGRA. Defendants' treatment of the Parcel as though it was Indian lands is in violation of federal law and in excess of the limits upon their governmental power and authority.

**36.** In 1994, Congress enacted the Federal Recognition Tribal List Act.  (Pub. Law 103-454.)  To be on this list a tribe must have obtained federal recognition "by Act of Congress" or "by the administrative procedures set forth in Part 83 of the Code of Federal Regulations denominated 'Procedures for Establishing that an American Indian Group Exist as an Indian Tribe.' " (Id.) The JIV has not filed a petition to become a tribe pursuant to the procedures of Part 83.

9

**37.** The BIA prepared and published a list entitled: "Indian Entities Recognized and Eligible To Receive Services From the Bureau of Indian Affairs." The BIA list included Part 83 federally recognized tribes and other "Indian entities". The JIV was included on this list as an Indian entity known as the "Jamul Indian Village of California" – a half-blood Indian community.

**38.** The only administrative way to become a federally recognized tribe is through the 25 C.F.R. Part 83 petition process. The inclusion of the JIV on this BIA list of "Indian Entities" entitled to BIA services did not make the JIV a federally recognized tribe under Part 83 or otherwise.

**39.** In 2006 the NIGC and DOI entered into a MEMORANDUM OF AGREEMENT which requires the NIGC Office of General Counsel (OGC)to prepare an opinion on "whether a tribe has Indian lands" whenever "a tribe requests that the NIGC  approve a management contract or ordinance for gaming", The NIGC issued its ILD on April 4, 2013.  On April 5, 2013, the JIV submitted a gaming ordinance and a gaming management contract to the NIGC for approval.  Both were subsequently approved by the NIGC. Plaintiffs are informed and believe, and on that basis allege, that the OGC prepared an ILD for the NIGC Chairwoman to consider when reviewing the proposed gaming ordinance and gaming management contract.

**STATEMENT OF FACTS**

**40.** Between 1850 and 1978, the Parcel was in private ownership subject to the sovereignty jurisdiction and regulatory authority of the State of California.  The Parcel was never public domain land nor reserved from public domain land.  Nor did the State of California ever cede sovereignty or jurisdiction over the Parcel to the United States.  See Cal. Gov. Code §§ 110 et seq. and 40 U.S.C. § 255

**41.** On December 12, 1978, the private owner recorded the gift grant deed for the Parcel in fee to the United States for the benefit of Jamul Indians of one-half degree or more Indian blood as designated by the Secretary of the Interior.

10

**42.** Consistent with the 1978 gift deed, the Secretary of Interior retained fee ownership of the Parcel and designated individual Jamul Indians as the beneficial owners who then lived on the Parcel and on adjacent land deeded to the Diocese of San Diego as an Indian cemetery.

**43.** In 1981, the JIV, with assistance of the BIA, became a "formal organization", and adopted a constitution, as "half-blood members of the Jamul Indian Village". The JIV's constitution does not identify a reservation or the Parcel as being the territory of the JIV.  Nor did the Secretary designate a beneficial interest in the property in favor of the JIV after it was created.

**44.** The JIV is not a federally recognized tribe. The JIV has never petitioned for tribal recognition pursuant to 25 CFR Part 83.  Nor has Congress recognized the JIV by an Act or Treaty.

**45.** After it was organized, the JIV claimed a beneficial interest in the Parcel.  This claim is disputed and has been litigated by the individual Jamul Indians which were designated by the Secretary of Interior as the Parcel beneficiaries prior to the creation of the JIV.  That litigation is continuing and involves competing claims to the beneficial interest in the Parcel.  None of the Plaintiffs were or are involved in those lawsuits. None of the lawsuits between Jamul Indians and the JIV involve IGRA or the Indian lands issue present in this case.   Nor do the Plaintiffs claim an ownership or a beneficial interest in the Parcel.

**46.** Even if the JIV has a beneficial interest in the Parcel, it is not trust land as that term is used in IGRA.   And, despite claiming to be the beneficial owners of the Parcel, the JIV has never applied to the Secretary to have the Parcel taken into trust pursuant to 25 C.F.R. Part 151.

**47.** In 1993, the JIV submitted a proposed Class II Gaming Ordinance to the NIGC for approval. The JIV Proposed gaming ordinance did not specify a reservation or the Parcel or any other land as being Indian lands eligible for Class II gaming under IGRA.

**48.** In 1994, the NIGC approved the JIV Class II Gaming Ordinance.  But the Parcel was not identified in the proposed ordinance.  In fact,  because the location of the casino was not

11

identified in the proposed ordinance, the NIGC cautioned the JIV stating in the letter of approval that:  "It is important to note that the gaming ordinance is approved for gaming only on Indian lands as is defined in the IGRA."

**49.** In 1996 the JIV, with support of the BIA, admitted Jamul Indians, who were only one-quarter Indian blood as members of the JIV. These less-than-half-blood Indians are now more than a majority of the members of the JIV.  Consequently, the JIV no longer meets the requirement of half-blood Indian community anticipated by the IRA and is, instead, a race based quarter-blood Indian community and not a tribal government.

**50.** On October 8, 1999, the JIV and the State of California entered into a Tribal-State Compact. The Parcel is not mentioned in the Compact. Nor is it identified as Indian lands owned by the JIV in the Compact.  Instead the Compact was based on representations of the JIV that they are a recognized tribe possessing the powers of self-government over Indian land eligible for gaming under IGRA.  Some of the key provisions of the Compact relevant here include:

**a.**  Section 15.6 of the Compact provides in part that: "In entering into this Compact, the State expressly relies upon the forgoing representations of the Tribe [that it is a federally recognized tribe with Indian land as defined by IGRA], and the State's entry into the Compact is expressly made contingent upon the truth of those representations as of the date of the Tribe's execution of this Compact."

**b.**  Section 4.2 of the Compact provides: "The Tribe may establish and operate not more than two Gaming Facilities, and only on those Indian lands on which gaming may lawfully be conducted under the Indian Gaming Regulatory Act."

**c.**  Section 10.8.3(b) of the Compact provides, in part, that: " On or after January 1, 2003, but not later than March 1. 2003, the State may request negotiations for an amendment to this Section 10.8 on the ground that , as it presently reads, the section has proven to be

12

inadequate to protect the off-Reservation environment from significant adverse impacts resulting from Projects undertaken by the Tribe or to insure adequate mitigation by the Tribe of significant adverse off-Reservation impacts."

    **d.**  Section 10.8.3(c) of the Compact provides, in part that: "If the State has requested negotiations pursuant to subdivision (b) but, as of January 1, 2005, there is neither an agreement not an order against the State . . . then, on that date, the Tribe shall immediately cease construction and other activities on all projects then in progress that have the potential to cause adverse off-Reservation impacts, unless and until an agreement to amend this Section 10.8 has been concluded between the Tribe and the State."

**51.** In March 2000 California amended the California Constitution to authorize the Governor "to negotiate and conclude compacts, subject to the ratification by the Legislature" for the conduct of Class III gaming "by federally recognized tribes on Indian lands in California in accordance with federal law." Cal. Const. Art. 4, Sec. 19(f).

**52.** On May 5, 2000, the DOI approved the 1999 Compact between the JIV and the State.  But the DOI letter conditioned its approval as follows: "[T]he Compact provides that gaming will be located on the Tribe's 'reservation land, which is located in San Diego County, California.' The terms of the Compact are approved only to the extent that they authorize gaming on 'Indian Lands' as defined by IGRA, now or hereafter acquired by the Tribe."

**53.** On July 17, 2001, Governor Davis sent a letter to the BIA asserting that a proposed "gaming establishment" in the Jamul area would be "detrimental to the surrounding community."

**54.** In 2002, the JIV initiated activities toward obtaining NIGC approval to construct a casino project on property other than the Parcel.

**55.** On or about February 28, 2003, as anticipated in the Compact, Governor Davis sent a letter to the JIV requesting renegotiation of Section 10.8.  The JIV ignored the Governor's request and

13

did not negotiate an amendment of Section 10.8.  Nor did the JIV obtain a Court order that it

need not renegotiate Section 10.8 of the Compact with the State.  California failed to

withdraw this request to renegotiate Section 10.8 prior to March 1, 2003.

**56.** In late 2003 the JIV revised their proposal to provide for the construction of a casino on the

Parcel and not on proposed trust land.

**57.**  On September 10, 2004, Governor Schwarzenegger sent a letter to the BIA confirming

Governor Davis's earlier concern that an approval of a gaming establishment in Jamul would

be detrimental to the surrounding community.

**58.**  On January 1, 2005 the JIV was required by the terms of the Compact to immediately cease

construction and other activities on their proposed casino projects on the Parcel unless and

until they reach an agreement with the State to amend this Section 10.8. The JIV and the State

have not concluded such an agreement.  Thus the current construction activities of a casino on

the Parcel are in violation of the Compact and federal law.

**59.**  On December 27, 2012, the JIV forwarded a tribal resolution to the NIGC declaring its

intention to negotiate a management contract with SDVG and requesting that the NIGC begin

the NEPA review process for approval of a management contract.

**60.** On January 2, 2013, the NIGC asked the BIA to prepare a record of decision to support the

NIGC's approval of the gaming management contract and related Indian lands determination.

**61.** On February 7, 2013, the NIGC entered a four-party professional services agreement with the

BIA, the JIV, and Environmental Data Systems, Inc. memorializing that EDS will provide

environmental consulting services, with project management from the BIA,  to prepare the

necessary environmental documentation.

**62.** On April 3, 2013, the JIV applied to the NIGC to approve a Class III Gaming Ordinance

under IGRA. This new ordinance replaced the JIV's 1994 Class II Gaming Ordinance.

14

**63.** On April 4, 2013 the NIGC issued a "PUBLIC NOTICE: Notice of Intent to Prepare a Supplemental Environmental Impact Statement (SEIS) for the Approval of a Proposed Gaming Management Contract "for a casino to be constructed on the Parcel.  The Notice provides in part that: "The Gaming Management Contract, if approved, would allow SDGV to manage the approved 203,000 square foot tribal gaming facility to be located on the Tribe's Reservation, which qualifies as "Indian lands" pursuant to 25 U.S.C. 2703."

**64.** On April 5, 2013, the JIV and Penn National announced in a press release that the management and development contracts were signed by Defendant Hunter as Chairman of the JIV and by Defendant Penn National based on the NIGC Indian lands determination that the JIV "reservation" was Indian lands.  The contracts were submitted to NIGC for approval.

**65.** On April 10, 2013, the NOTICE was published in the Federal Register.  (78 Fed.Reg. 21398).

**66.** The NIGC Notice also indicated that it will circulate the SEIS  and complete the NEPA process before considering and, possibly, approving the proposed gaming management contract. See 25 C.F.R. §§ 522.2 and 559.1-2.  It has been 18 months and the SEIS still has not been circulated for public input and comment.  In the meantime, before complying with NEPA, the Defendants are illegally allowing construction of the casino to go forward

**67.** On July 1, 2013, Defendant Stevens approved JIV's amended Class III Gaming Ordinance for the JIV's Reservation.  The JIV amended the Gaming Ordinance at the direction of the OGC.

**68.** The NIGC was required, and apparently did approve the management contract, submitted on April 5, 2013, within nine months, or before January 5, 2014. 25 U.S.C. §§ 2710 & 2711.

**69.** On January 10, 2014, the JIV and Penn National announced the initiation of construction of a million square foot building/casino on the Parcel while they continued to work with the NIGC on management issues. The initiation of construction was based on the approved ILD, the approved JIV Gaming Ordinance and the approved JIV-Penn National Management Contract,

15

**70.** In April 2014, the JIV and Defendant Raymond Hunter, with the concurrence and approval of Defendants JIV Council Members, filed briefs in this case claiming that their beneficial interest in the Parcel is trust land which, under their Compact with the State, supposedly gives it the "federal right to develop a tribally-owned gaming enterprise on its Indian lands."

**71.** Unlike the Federal Defendants, the JIV and Defendants JIV Council Members do not claim that the Parcel is a "reservation."   Nor do they claim that that their beneficial interest in the Parcel was taken into trust for the JIV per 25 C.F.R. Part 151.

**72.** The JIV's beneficial interest claim to the Parcel is not a reservation or trust land under JIV's governmental control and therefore it is not Indian lands as defined by IGRA.

**73.** A tribe does not have the authority to unilaterally declare or create a reservation or trust land for its own benefit, or to put lands into trust without complying with 25 CFR Part 151.  *City of Sherrill v. Oneida Nation of New York* 1255 S.Ct. 1478 (2005).

**FIRST CLAIM FOR RELIEF**

**Declaratory and Injunctive Relief - Indian Gaming Regulatory Act**

**74.** Plaintiffs repeat and re-allege paragraphs 1 through 73 inclusive, of this Second Amended and Supplemental Complaint, as if fully set forth here.

**75.** Plaintiffs seek a declaration from this Court that, contrary to the determination of the NIGC, the Parcel is not a reservation or Indian lands eligible for gaming under IGRA.   The Plaintiffs seek a declaration that the NIGC's approvals of the gaming ordinance and gaming management contract based on this incorrect ILD are arbitrary, capricious and contrary to law.

**76.** Plaintiffs also seek injunctive relief from this Court enjoining the construction of an illegal casino on the Parcel and enjoining the implementation of the NGIC approved JIV Gaming Ordinance and the JIV/Penn National gaming management and development contracts which are facilitating construction of an illegal casino on the Parcel by the Defendants.

16

**77.** Contrary to the NIGC's ILD, the Parcel is not an Indian reservation.  Congress has limited the number of reservations in California to four in the 1864 Four Reservations Act and to the Mission Indian reservations allowed by the 1891 MIRA. The Parcel was not created as an Indian reservation by either of these Acts or by any other Act of Congress.

**78.** The Federal Defendants' determination in the SEIS Notice that the Parcel is a "Reservation, which qualifies as 'Indian Lands' pursuant to 25 U.S.C. 2703" as being eligible for gambling under IGRA is arbitrary and capricious and contrary to law. This NIGC Indian lands determination should be reversed and vacated by this Court.

**79.** The Federal Defendants' approval of the JIV's Gaming Ordinance based on their determination that the Parcel is a "Reservation, which qualifies as 'Indian Lands' pursuant to 25 U.S.C. 2703" as being eligible for gambling under IGRA is arbitrary and capricious and contrary to law.  NIGC's approval of the gaming ordinance should be vacated by this Court.

**80.** The Federal Defendants' approval of the gaming management and development contracts between JIV and Penn National and/or SDGV based on their determination that the Parcel is a "Reservation, which qualifies as 'Indian Lands' pursuant to 25 U.S.C. 2703" as being eligible for gambling under IGRA is arbitrary and capricious and contrary to law.  NIGC's approval of the gaming and management contracts should be reversed and vacated by this Court.

**81.** Based on this unlawful Indian lands determination and the related approvals, the Federal Defendants have approved, allowed and facilitated the construction of a major casino on the Parcel in violation of State and federal law and to the detriment and injury of Plaintiffs.

**82.** As a result of this unlawful Indian lands determination, approvals of the management contract and gaming ordinance and the casino construction, the JIV is being allowed to build a Class III casino on the Parcel which, if completed, will cause major environmental impacts in and around the town of Jamul and San Diego County and irreversible harm to the Plaintiffs and

17

their members and community.  It would be an illegal gambling casino which should be enjoined as a violation of IGRA and a public nuisance under State and federal law.

**83.** Plaintiffs are entitled to injunctive relief to enjoin the continued construction of an illegal casino on the Parcel. Granting preliminary and permanent injunctive relief will be in the public interest and consistent with the State law and policy to prevent illegal gaming on land that does not qualify under IGRA for gaming.

**84.** Plaintiffs have no adequate remedy at law.  Plaintiffs have a high likelihood of success on the merits of the claims.  Plaintiffs request an injunction against Defendants, and each of them, to prevent the construction of an illegal casino on the Parcel in violation of federal and State law.

**85.** Plaintiffs request that the Court reverse and vacate the NIGC's approvals of the ILD, Gaming Ordinance and Management Contract as being arbitrary, capricious and contrary to law.

**SECOND CLAIM FOR RELIEF**

**Declaratory and Injunctive Relief - Indian Reorganization Act of 1934**

**86.**   Plaintiffs repeat and re-allege paragraphs 1 through 85 inclusive, of this Second Amended and Supplemental Complaint, as if fully set forth here.

**87.** Plaintiffs seek a declaration from this Court that, contrary to the assertions of the Defendants JIV Council Members, the beneficial interest in Parcel in favor of half-blood Jamul Indians is not trust land over which the JIV lawfully exercises governmental power or Indian lands eligible for gaming under IGRA.

**88.** Plaintiffs also seek injunctive relief from this Court enjoining the construction of an illegal casino on the Parcel and enjoining the implementation of the JIV Gaming Ordinance and implementation of the JIV management and development contracts which are facilitating the construction of an illegal casino on the Parcel by the Defendants.

18

**89.** Neither the Parcel, nor the beneficial interest in the Parcel for half-blood Jamul Indians, is trust land over which a federally recognized Indian tribe lawfully exercises governmental power and therefore is not Indian lands eligible for gaming or an Indian casino under IGRA.

**90.** Under the IRA, the DOI is authorized to take land into trust for only those tribes that were federally recognized and under federal jurisdiction in June 1934 when the IRA was enacted. 25 U.S.C. §§ 465, 467, & 479; *Carcieri v. Salazar, supra.*

**91.** Neither the JIV, nor the Defendants JIV Officials, was a federally recognized tribe in June 1934 when Congress enacted the IRA. Thus neither the JIV, nor the Defendants JIV Officials, is eligible to have lands placed into trust under the IRA on their behalf because they were not a recognized tribe under federal jurisdiction in 1934. *Carcieri v. Salazar, supra.*

**92.** Neither the JIV, nor the Defendants JIV Officials, have applied to the BIA or DOI to have the Parcel, or the claimed beneficial interest in the Parcel, taken into trust for the benefit of the JIV pursuant to the IRA or 25 C.F.R. Part 151 or pursuant to any other Act.

**93.** The Secretary of Interior has not taken the Parcel, or the JIV's claimed beneficial interest in the Parcel, into trust for the JIV or for the Defendants JIV Officials pursuant to 25 C.F.R. Part 151 or the IRA or any other Act of Congress.

**94.** There is no other act, statute or regulation in existence that authorizes the Defendants to take the Parcel, or the claimed beneficial interest the Parcel, into trust for the JIV.

**95.** The JIV was created by the BIA in 1982 as a non-governmental half-blood Indian community. It later changed its membership to become a less-than-half-blood Indian community. It was not in existence in 1934.  The JIV has not petitioned for tribal recognition pursuant to 25 C.F.R. Part 83 and has never lawfully exercised governmental power over the Parcel.

**96.** Defendants' decision that the Parcel qualifies for gambling under 25 U.S.C. § 2703 is arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, beyond the

19

scope of the Secretary's authority under the IRA, and issued in a manner not in accordance with law. 5 U.S.C. § 706(2).

**97.** There is an actual controversy among the parties, within the meaning of the federal Declaratory Relief Judgment Act (28 U.S.C. § 2201) regarding the eligibility of an Indian community, not federally recognized as a tribe, such as the JIV, to receive or hold trust lands under the IRA as though it were a federally recognized tribe in 1934.  There is also an actual controversy among the parties regarding whether the JIV's beneficial ownership claim to the Parcel qualifies as Indian lands eligible for gaming under IGRA. A declaratory judgment in favor of Plaintiffs and against the Defendants on these issues is necessary and proper.

**98.** Plaintiffs' remedies at law are inadequate. Injunctive relief, both preliminary and permanent, is necessary to prevent irreparable injury to the Plaintiffs.  In the absence of the injunctive relief requested in this action, an unlawful casino complex will be constructed by Defendants and will be allowed to open and operate in the rural Jamul community in San Diego County. The Defendants JIV Officials should be enjoined from approving or implementing the management and development contracts and from facilitating or continuing the construction of an illegal casino on the Parcel based on their unlawful claim that their claimed beneficial interest in the Parcel is trust land eligible for Indian gaming under IGRA.

**99.** Plaintiffs request that the Court reverse and vacate the NIGC's approval of the ILD, Gaming Ordinance and Management Contract as being arbitrary, capricious and contrary to law including, but not limited to, the IRA.

### THIRD CLAIM FOR RELIEF

### Declaratory Relief and Injunctive Relief – Constitutional Law

**100.** Plaintiffs repeat and re-allege paragraphs 1 through 99 inclusive, of this Second Amended and Supplemental Complaint, as if fully set forth here.

20

101.     After California became a sovereign State of the United States in 1850, on an equal

footing with all other States, it received regulatory and police power jurisdiction over all

property within the State – including federally owned public domain lands.  Until public

domain lands are conveyed to the State or into private ownership, the United States retains

limited regulatory authority over public domain lands if necessary to further a federal

purpose.  *Kleppe v. New Mexico* 429 U.S. 873 (1976).

102.     Thus, the United States has the authority, in some circumstances, to create an Indian

reservation from retained public domain lands.   By definition, an Indian reservation is created

by the Secretary, pursuant to an Act of Congress, executing an order withdrawing specific

parcels from public domain land and reserving it for the specific purpose of the withdrawal

order.  *See U.S. v. Midwest Oil Co.* 236 U.S. 459 (1915).

103.     But after public domain property is conveyed to the State, or into private ownership, the

United States no longer has authority to create an Indian reservation over non-public domain

lands.  *See Hawaii v. Office of Hawaiian Affairs*, 129 S Ct. 1436 (2009). The Supreme Court

concluded that "it would raise grave constitutional concerns" if Congress sought to "cloud

Hawaii's title to its sovereign lands" after it had joined the Union. "We have emphasized that

Congress cannot, after statehood, reserve or convey…lands that have already been bestowed

upon a state…" *Hawaii v. Office of Hawaiian Affairs*, *supra.*

104.     The State of California entered the Union on September 9, 1850, on an equal footing with

all other States.  As is the case with all States, public domain lands in California were to be

transferred to either the State or into private ownership subject to State jurisdiction and

regulation. California's Act of Admission mandated that California shall not interfere with the

primary disposal of public domain lands by the United States.  (9 Stats. 452.)

21

**105.**     In addition, in 1864, Congress limited the number of Indian Reservations that could be created in California from public domain lands to four.  (13 Stat. 39.)  In 1891 MIRA allowed for the creation of Mission Indian reservations. (26 Stat. 212) The remainder of the public domain land was to be transferred to the State or eventually sold into private ownership.

**106.**     The Defendants' decision that the Parcel is reservation or Indian lands eligible for gambling free from State regulation is an unconstitutional infringement on private land titles and on State's plenary power to regulate its citizenry because the Parcel was never part of the public domain and was never lawfully reserved.

**107.**     The decision by the Federal Defendants that the Parcel is a reservation or Indian lands exempt from State regulation, is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.  It should be vacated and its implementation enjoined as an unconstitutional usurpation of State jurisdiction and regulation.

**108.**     In addition the Defendants attempt to exclude the Parcel from State jurisdiction and regulation is contrary to an established directive from the Secretary of Interior. See Notice of the Office of the Secretary of Interior, issued pursuant to 25 C.F.R § 1.4, adopting and applying State laws on all Indian property in California (30 Fed.Reg. 8722 (1965).).

**109.**     By attempting to preclude the application of State law to the Parcel is a violation of the Constitution and the principles of federalism.  Each Defendant has acted, or threatened to act, under the color of governmental authority to the injury of Plaintiffs in violation of federal law and in excess of federal limitations upon the power and authority of each such Defendant.

**110.**     The JIV was organized in 1981 as a half-blood Indian community.  Although not a federally recognized tribe, this racial half-blood Indian community is consistent with the IRA.

**111.**     The JIV reorganized itself in 1996 as a quarter-blood Indian community.  This racial quarter-blood Indian community is not allowed by, the IRA.

22

112.    The Federal Defendants efforts to give the JIV preference and benefits based on its make-up of quarter-blood Indians is a violation of the United States Constitutions and the equal protection rights of the Plaintiffs.  Each Defendant has acted, or threatened to act, under the color of federal governmental authority to the injury of Plaintiffs in violation of federal law and in excess of federal limitations upon the power and authority of each such Defendant.

113.    There is an actual controversy among the parties, within the meaning of the federal Declaratory Relief Judgment Act (28 U.S.C. § 2201) regarding whether the Defendants can hold the Parcel free from State and local regulation and for the benefit of a racial quarter blood Indian community.  Plaintiffs contend that the federal government cannot, after statehood, reserve, convey, or regulate lands that are no longer public domain lands.  The Federal Defendants claim that they have the authority to acquire and hold lands into trust for the JIV free of State and local regulation and that they can give preferential treatment to the JIV as a quarter-blood Indian racial group.  Also Defendants JIV Officials claim that they need not comply with State and local laws or the Constitution when constructing a casino on the Parcel.    A declaratory judgment by this Court in favor of Plaintiffs on these issues is necessary and proper.

114.    Plaintiffs' remedies at law are inadequate. Injunctive relief, both preliminary and permanent, is necessary to prevent irreparable injury to the Plaintiffs, the public and the environment if a casino is constructed on the Parcel in violation of State and federal law.  In the absence of the relief requested in this action, an unlawful casino complex will be allowed to open and operate in the rural Jamul community in San Diego County without complying with State and local law.  Plaintiffs request a mandatory injunction directing the Defendants to comply with State and local law when developing the Parcel.

23

**FOURTH CLAIM FOR RELIEF**

**Injunctive Relief and Damages – Public Nuisance and Nuisance Per Se**

**115.**    Plaintiffs repeat and re-allege paragraphs 1 through 114 inclusive, of this Second

Amended and Supplemental Complaint, as if fully set forth here.

**116.**    Plaintiffs bring this claim for injunctive relief and damages against the individual Federal

Defendants, the individual JIV Defendants and the three corporate Defendants. They are

being sued in their personal capacity for allowing and facilitating the construction of an illegal

gambling casino on the Parcel in violation of federal and State law.  Each such Defendant has

acted, or has threatened to act, under the color of governmental authority to the injury of

Plaintiffs in violation of federal and State law and in excess of the federal and State

limitations upon their power and authority.   *Ex parte Young*  (1908) 209 U.S. 123.

**117.**    The California Constitution allows and limits Class III gaming to "federally recognized

tribes [with an approved tribal-state compact] on Indian lands in California in accordance with

federal law." Cal. Const. Art. 4, Sec. 19(f).

**118.**    IGRA defines Indian lands to include reservations or trust lands over which a federally

recognized tribe has lawfully exercised governmental power.   Neither the Parcel, nor JIV's

claimed beneficial interest in the Parcel, qualifies as Indian lands under IGRA.

**119.**    The JIV was organized as a half-blood Indian community and has not petitioned to

become a "federally recognized tribe" under Part 83.  The Parcel is not "Indian lands in

California" eligible for gambling under IGRA.  Thus the proposed gambling casino on the

Parcel by the JIV and Defendants JIV Officials is illegal in California.

**120.**    California Penal Code section 11225, provides that: "Every building or place used for the

purpose of illegal gambling . . . is a nuisance which shall be enjoined, abated and prevented,

and for which damages may be recovered, whether it is a public or private nuisance."

24

**121.**    California Penal Code section 11226 provides that "any State resident of the County may maintain an action in equity to enjoin, abate and prevent a nuisance."

**122.**    The construction of an illegal casino is a public nuisance and violation of law that will cause significant harm to the Plaintiffs, long-time residents of Jamul, who live near the Parcel.

**123.**    The negative effects of building and operating the casino in Plaintiffs' community include: (a) an irreversible change in the rural character of the area; (b) loss of enjoyment of the aesthetic and environmental qualities of the agricultural land surrounding the casino site; (c) increased traffic; (d) increased light, noise, air, and storm water pollution; (e) increased crime; (f) diversion of police, fire, and emergency medical resources; (g) decreased property values; (h) increased property taxes; (i) diversion of community resources to the treatment of gambling addiction; (j) weakening of the family conducive atmosphere of the community; and (k) other aesthetic, socioeconomic, and environmental problems associated with gambling.

**124.**    Plaintiffs' remedies at law are inadequate. Injunctive relief, both preliminary and permanent, against the Defendants, enjoining the continued construction of the illegal casino is necessary to abate and prevent a public nuisance and to prevent irreparable injury.

**125.**    The Plaintiffs seek injunctive relief to prevent the continued construction of an illegal casino in Jamul, San Diego. The continued construction of an illegal gambling casino on non-Indian lands should be enjoined as a public nuisance and a public nuisance per se in violation of State and federal law.  Cal. Const. Art. 4, Sec. 19 and Cal. Penal Code § 11225.

**FIFTH FOR RELIEF**

**Declaratory Relief and Mandate - National Environmental Policy Act**

**126.**    Plaintiffs repeat and re-allege paragraphs 1 through 125 inclusive, of this Second Amended and Supplemental Complaint, as if fully set forth here.

**127.** The Defendants approval and implementation of the ILD, the gaming ordinance and management and development contracts violate the National Environmental Policy Act (NEPA). 42 U.S.C. § 4321 et. seq.; 40 C.F.R. 1500 et seq.  The Defendants did not prepare an environmental assessment or comply with NEPA before approving the ILD, tribal gaming ordinance or the management and development contracts and the construction of the casino.

**128.** NEPA requires that "all agencies of the Federal Government shall…include in every recommendation or report on…major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official."  42 U.S.C. § 4332.  The approval of the ILD, gaming ordinance, management and development contracts and casino construction on land owned by the United States are a major federal actions under NEPA.

**129.** Defendants ignored or failed to adequately consider or mitigate the environmental impacts of their actions and the proposed illegal Indian casino on Jamul and the surrounding community, including the socio-economic impact, such as the impacts associated with crime and problem gambling, and the impacts on public and social services, such as wastewater service, fire and emergency medical services, law enforcement, housing, roads and transportation resources, schools, cultural and archaeological resources including the internment of human remains and funerary objects and other public and social services.

**130.** Defendants' failed to take a proper "hard look" at the environmental impact of the proposed mega-casino development before approving the ILD, approving the JIV gaming ordinance, approving the management and development contracts and initiating casino construction. 42 U.S.C. § 4321 *et seq.*; 40 C.F.R. § 1508.8.

**131.** Specifically, the Defendants failed to take a hard look at the significant, inherent, and well documented negative and detrimental impacts to: (a) transportation and traffic, (b) road access, (c) fire and emergency services, (d) biology and the Multiple Species Conservation

26

Plan for the neighboring Rancho Jamul Ecological Preserve,  (e) failure to comply with CEQA and NEPA, (f) hydrology and water quality,  (g) groundwater resources, (h) soils and geology, (i) cultural and archeological resources, not to mention the interment of human remains and funerary objects on the Parcel, (j) noise, (k) air quality and climate change, (l) wastewater treatment, (m) electrical power, (n) visual impacts, (o) community character, (p) growth, and (q) Jamul's dark skies.

132.    Defendants also failed to fully consider or adequately assess the impact that the ILD and proposed casino will have on local communities, as required by 25 C.F.R. § 151.10(e) and NEPA, and Defendants failed to assess and propose adequate mitigation measures for these community related impacts.

133.    Defendants failed to adequately consider alternatives to approving the gaming ordinance and management contract as required by 40 C.F.R. § 1502.14. Defendants were required to "[r]igorously explore and objectively evaluate all reasonable alternatives …." *Id*. Yet the Defendants failed to even consider whether the JIV could legally build a casino on the Parcel.

134.    Defendants failed to conduct a fair, unbiased and complete analysis of the human impacts that will be caused by approving the gaming ordinance and management contract, as required by NEPA.  For example, Defendants failed to consider the detrimental economic impacts on tribal governmental operations and member services that the mega-casino development will have on the Sycuan, Viejas and Campo tribes, including loss of jobs, inability to make per capita payments to its citizens, and elimination of contributions to local organizations.

135.    Despite the Public Notice, the SEIS for the proposed Gaming Management Contract was never prepared or circulated as required by NEPA.  Nor was the proposed Gaming Management Contract provided.  Nor were the terms of the Gaming Management Contract disclosed as required by 25 U.S.C. §§ 2710(d) (9) and 2711(b)-(f).

27

**136.** Defendants failed to comply with 40 C.F.R. § 1506.5 and 1506.6 in conducting public hearings, in conducting the public participation and public hearing process, and in reviewing and approving the proposed SEIS in violation of the APA. 5 U.S.C. §§ 702, 704,706

**137.** The DOI failed to ensure complete and proper public participation, including by failing to properly consult under 25 C.F.R. Part 292, properly consider comments of, and allow or adequate participation by the general public, by denying access and time to certain participants at the expense of other participants, and by denying requests to extend or reopen the comment period and the public hearing process.

**138.** The failure of the Defendants to comply with NEPA or to take a "hard look" at, and adequately address, the adverse environmental and socio-economic impacts of the ILD, and related actions, is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law (5 U.S.C. § 706.)

**139.** Furthermore, Federal Defendants gave preferential treatment to the Indians and the JIV and were required to resolve all doubts in favor of the Indians and JIV.  Consequently, Federal Defendants are not able to comply with NEPA and take an unbiased "hard look" at the casino project and its impacts.

**140.** There is an actual controversy among the parties, within the meaning of the federal Declaratory Relief Judgment Act (28 U.S.C. § 2201) and an actual case and controversy under Article III of the United States Constitution, regarding whether the Federal Defendants complied with the provisions of NEPA before they approved the ILD and management and development contracts.  A declaratory judgment by this Court in favor of Plaintiffs and against the Federal Defendants on these issues is necessary and proper.

**141.** Plaintiffs' remedies at law are inadequate. Injunctive relief, both preliminary and permanent, is necessary to prevent irreparable injury to the Plaintiffs. In the absence of the

relief requested in this action, an unlawful casino complex will be allowed and constructed by Defendants and allowed to open and operate in the Jamul community in San Diego County by the Defendants before the NEPA process is complete. The Defendants' approvals of the ILD, management and development contracts and casino construction should be vacated and should be enjoined until the Defendants completely comply with NEPA.

142.   The Plaintiffs request that the Court mandate that the NIGC complete and circulate the SEIS before approving or implementing the gaming ordinance or management contract.

### SIXTH CLAIM FOR RELEIF

### Declaratory and Injunctive Relief – Violation of the Federally Approved Compact

143.   Plaintiffs repeat and re-allege paragraphs 1 through 142 inclusive, of this Complaint, as if fully set forth here.

144.   The 1999 Compact between the State and JIV was approved by the DOI in 2000. A Compact, once approved by the DOI, becomes federal law and is enforceable as such.

145.   The Compact authorized gaming facilities "only on those Indian lands on which gaming may lawfully be conducted under the Indian Gaming Regulatory Act." Compact, Section 4.2.

146.   The DOI May 5, 2000 letter of approval of the terms of the Compact was "only to the extent that they authorize gaming on 'Indian lands' as defined by IGRA."

147.   The Compact is based on JIV's generic representations and does not identify the Parcel or any property as Indian lands eligible for gaming under IGRA.

148.   Furthermore, the Compact prohibits the construction of a gaming facility on Indian lands by the JIV after January 1, 2005 "unless and until an agreement to amend this Section 10.8 has been concluded between the Tribe and the State." Compact, Section 10.8.3(c).

149.   Section 10.8 of the Compact incorporates the policies and purposes of NEPA and CEQA to mitigate any and all significant adverse off-reservation environmental impacts resulting

29

casino construction projects.  Despite a timely request from the State, on or about February 28, 2003, the JIV has not agreed to an amendment to Section 10.8 of the Compact. Construction on the casino should cease until Section 10.8 is amended.

150.    The Plaintiffs seek a declaration from this Court that the Parcel is not Indian lands eligible for gaming under the Compact, the DOI approval of the Compact or IGRA.

151.    The Plaintiffs also seek a preliminary and permanent injunction from this Court enjoining the continued construction of the casino because it violates the Compact, the DOI approval of the Compact and IGRA.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that this Court enter judgment in their favor and against all the Defendants, and each of them, as follows:

A.   That this Court declare that the Federal Defendants approvals of the ILD, the JIV gaming ordinance and the JIV-Penn National management and development contracts based on the finding that the Parcel is reservation or Indian lands eligible for tribal gaming under IGRA are arbitrary, capricious, and contrary to law.

B.  That this Court declare that neither the Parcel, nor the JIV Defendants claimed beneficial interest in the Parcel is trust land under JIV's government control or Indian lands eligible for tribal gaming under the IRA, IGRA and their implementing regulations;

C.  That this Court declare that the Defendants have no authority to take  the Parcel in trust or to treat it as a reservation free of State regulation and that the decision to do so in the ILD, gaming ordinance and management contract is arbitrary, capricious and contrary to law;

D.  That this Court declare that the Defendants attempt to give benefits and preference to the JIV as a racial group of less than half-blood Indians violates the Constitution, due process and equal protection;

30

E.  That the Court enjoin the continued construction of the illegal casino by the Defendants on the Parcel as a public nuisance and a nuisance per se;

F.  That this Court declare that the Defendants failed to comply with NEPA and mandate that they comply with NEPA before they approve or implement the ILD, gaming ordinance and management contract and before allowing continued construction on the Parcel;

G.  That this Court declare that the construction of the casino on the Parcel is a violation of the federally approved Compact, the DOI and IGRA and enjoin the continued construction of the casino by the Defendants;

H.  That the Court enter an order mandating the Federal Defendants to disclose the ILD and all related documents in their possession as required by the APA.  5 U.S.C. § 706.

I.  That this Court enter an order enjoining the Defendants from approving or implementing any aspect of the ILD, gaming ordinance or management and development contracts;

J.  That this Court enter a judgment and an order enjoining Defendants from allowing, facilitating or continuing the construction of the illegal casino on the Parcel;

K.  That this Court enter judgment and an order awarding Plaintiffs' costs and reasonable attorney's fees as permitted by law including the Equal Access to Justice Act; and

L.  That this Court award such further relief as to the Court deems just and proper.


Dated:  August 26, 2014

Respectfully submitted,

/s/Kenneth R. Williams

KENNETH R. WILLIAMS
*Attorney for Plaintiffs*
*Jamul Action Committee, Jamul Community*
*Church, Darla Kasmedo, Paul Scripps,*
*Glen Revell and William Hendrix*

31