1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JAMUL ACTION COMMITTEE, et al.,              No.  2:13-cv-01920-KJM-KJN

12                  Plaintiffs,

13        v.                                      ORDER

14   JONODEV CHAUDHURI, et al.,

15                  Defendants.

16

17

18          The plaintiffs in this action are a group of individuals, a non-profit association, and

19   a community church from Jamul, California.  For convenience, in this order the court refers to

20   them together as the Jamul Action Committee (JAC), the first plaintiff named in the caption.  In

21   this lawsuit the JAC asks the court to stop construction of a casino on the Jamul Indian Village's

22   land, among related requests for declaratory relief.  In short, the JAC alleges the casino is illegal

23   because it is being constructed on land that federal law does not make eligible for gambling.

24          The defendants, who include federal officials, members of the Jamul Indian

25   Village, and private corporations tasked with the construction and eventual management of the

26   casino, move to dismiss the case on a number of jurisdictional and other grounds.  The Jamul

27   Indian Village itself is not a party.  The court held a hearing on April 22, 2016.  Kenneth

28   Williams appeared for the JAC; Barbara Marvin, Judith Rabinowitz, and Vicki Boesch appeared

                                              1

1  for the federal defendants; and Frank Lawrence appeared for the defendants associated with the

2  Jamul Indian Village.  The motions to dismiss are granted in part, as explained below.

3  I.      ALLEGATIONS AND CLAIMS

4              As a preliminary matter, although the JAC alleges the Jamul Indian Village is not a

5  federally recognized Indian tribe, Second Am. Compl. (SAC) ¶ 44, ECF No. 51,[1] the court has in

6  previous orders decided the opposite is true, Order on Prelim. Inj. at 2, ECF No. 93; Order on

7  Mot. Dismiss at 7, ECF No. 50.  This court is not the only one to have reached this conclusion.

8  *See Jamul Action Comm. v. Chaudhuri*, ___ F.3d ___, 2016 WL 3910597, at *1 (9th Cir. June 9,

9  2016); *Rosales v. United States*, 89 Fed. Cl. 565, 571–72 & nn.2–3 (2009); *Rosales v. United*

10  *States*, No. 07-0624, 2007 WL 4233060, at *5 & n.4 (S.D. Cal. Nov. 28, 2007).  The court

11  therefore refers to the Jamul Indian Village as "the Tribe" in this order.

12             The JAC filed this lawsuit after the National Indian Gaming Commission (NIGC)

13  published a notice in the Federal Register in April 2013, which stated that the NIGC would

14  prepare a statement on the environmental impacts of an agreement between the Tribe and

15  defendant San Diego Gaming Ventures, LLC (SDGV).  78 Fed. Reg. 21,398 (Apr. 10, 2013);[2] *see*

16  *also* SAC ¶ 2.  According to the NIGC's notice, SDGV would manage a casino the Tribe planned

17  for construction outside Jamul, California.  *See* 78 Fed. Reg. 21,399.  The notice also explained

18  that the casino would be constructed "on the Tribe's Reservation."  *Id.*  In a previous notice

19  published in the Federal Register more than a decade earlier, the NIGC and Bureau of Indian

20  /////

21

22             [1] At hearing, the JAC's counsel argued it would not seek to prove that the Tribe lacks
federal recognition.  This assertion directly contradicts the allegations of the operative complaint.
23  *See, e.g.*, SAC ¶¶ 31–32 ("In 1978 the DOI adopted regulations outlining 'Procedures for
Establishing that an American Indian Group Exists as an Indian Tribe.'  These procedures are
24  currently codified at 25 C.F.R. §§ 83.1-83.13.  The JIV has not filed a Part 83 petition to become
a federally recognized tribe.  Nor could the JIV meet the requirements of Part 83. . . .");  *id.* ¶ 44
25  ("The JIV is not a federally recognized tribe.").

26             [2] The court takes judicial notice of the NIGC notice and the other entries in the Federal
Register cited in this order.  *See* 44 U.S.C. § 1507; *United States v. Woods*, 335 F.3d 993, 1001
27  (9th Cir. 2003).  A more detailed description of the NIGC's notice and the relevant statutory and
28  regulatory regime may be found in this court's previous order.  *See* Order on Prelim. Inj. 2–8.

1   Affairs had not referred to this land as the Tribe's "Reservation." *See* Notice of Intent, 67 Fed.

2   Reg. 15,582 (Apr. 2, 2002); *see also* Notice, 68 Fed. Reg. 1,475 (Jan. 10, 2003).

3          The JAC understood the NIGC's April 2013 notice as a formal declaration that the

4   Tribe "has a Reservation that qualifies as 'Indian lands' eligible for gaming" under the Indian

5   Gaming Regulatory Act (IGRA). SAC ¶ 2. In the JAC's view, this determination runs counter to

6   federal law, because although the Tribe may have a beneficial interest in the land in question, that

7   land "is not a reservation or trust land" as defined by IGRA. SAC ¶ 72; *see also id.* ¶ 35 (citing

8   25 U.S.C. § 2703(4)[3]). Rather, the JAC alleges the Tribe is not a federally recognized Indian

9   tribe. *See id.* ¶¶ 31–38, 40–46. It argues the land the NIGC referred to as a "Reservation" cannot

10   be a reservation because it is not one of the few areas so denominated and specifically established

11   by federal law, *id.* ¶¶ 26–28, and an Indian tribe may not unilaterally create a reservation, *id.*

12   ¶ 73. It also alleges the federal government never took the land into trust for the Tribe's benefit

13   under the procedures adopted by the United States Department of the Interior. *See id.* ¶¶ 27–38.

14          In July 2013, Tracie Stevens, the NIGC's chairperson at the time, approved a

15   gaming ordinance for the Tribe's proposed casino that allowed "Class III" gaming, i.e., casino

16   gambling. *Id.* ¶ 67; *see also* 25 U.S.C. § 2710 (IGRA provisions on the approval of an Indian

17   tribe's gaming ordinances); *Michigan v. Bay Mills Indian Cmty.*, ___ U.S. ___, 134 S. Ct. 2024,

18   2028–29 (2014) (describing Class III gaming under IGRA). NIGC also allegedly approved a

19   contract between the Tribe and SDGV before January 2014, SAC ¶ 68, and construction began in

20   January 2014, *id.* ¶ 69. In fact, however, it appears a gaming management contract still has not

21   been approved. *See* Order on Prelim. Inj. at 7–8; Status Order Nov. 4, 2015, at 7, ECF No. 115.

22          The JAC asserts six claims for relief. First, it challenges the casino's construction

23   because the Tribe is not a federally recognized Tribe and the real property on which the casino

24   will sit is not "Indian lands." SAC ¶ 75. The JAC's briefing and argument at hearing clarified

25

26         [3] This subsection defines "Indian lands" as "(A) all lands within the limits of any Indian reservation; and (B) any lands title to which is either held in trust by the United States for the

27   benefit of any Indian tribe or individual or held by any Indian tribe or individual subject to restriction by the United States against alienation and over which an Indian tribe exercises

28   governmental power." 25 U.S.C. § 2703(4).

1    this first claim is asserted against NIGC under the Administrative Procedure Act (APA).  Opp'n

2    Tribe Defs.' Mot. 7, ECF No. 143; Opp'n Fed. Defs.' Mot. 4, ECF No. 144.  It claims the NIGC

3    arbitrarily and capriciously (1) defined the Tribe's land as a "Reservation" or land otherwise

4    designated "Indian lands," (2) approved the gaming ordinance, and (3) approved the gaming

5    management and other contracts.  It seeks an order enjoining construction of a casino on the

6    Tribe's land.  SAC ¶¶ 83–84.  It asks the court to reverse the NIGC's approvals.  *Id.* ¶ 85.

7            In its second claim, the JAC asserts construction of a casino will violate the Indian

8    Reorganization Act of 1934 (IRA) because the Tribe did not exist in 1934 when that legislation

9    was passed.  *See id.* ¶ 91.  In its opposition briefing and at hearing, the JAC clarified that it brings

10   this claim against the U.S. Department of the Interior and Bureau of Indian Affairs under the

11   APA.  *See* Opp'n Tribe Defs.' Mot. at 8–9; Opp'n Fed. Defs.' Mot. at 5.  It claims these agencies'

12   "efforts and actions" to take the land into trust were arbitrary, capricious, and illegal, Opp'n Tribe

13   Defs.' Mot. at 8–9; Opp'n Fed. Defs.' Mot. at 5, and requests an order enjoining the casino's

14   construction.

15           Third, the JAC asserts a constitutional claim, alleging the various defendants'

16   collective decision to approve construction of a casino and begin construction "is an

17   unconstitutional infringement on private land titles and on [California's] plenary power to

18   regulate its citizenry."  SAC ¶ 106.  It also alleges the defendants give unconstitutional preference

19   to the Tribe and its members without justification.  *See id.* ¶112.  In its opposition briefing, the

20   JAC clarified this claim is founded on principles of federalism and the Equal Protection Clause.

21   Opp'n Tribe Defs.' Mot. at 9–10; Opp'n Fed. Defs.' Mot. at 6.

22           Fourth, the JAC alleges the casino's construction violates the California

23   constitution and public nuisance law, which permits gambling operations only by federally

24   recognized Indian tribes on Indian lands.  SAC ¶¶ 117–23.  The JAC asserts this claim against the

25   individual defendants and the three corporate defendants affiliated with the Tribe.  *Id.* ¶ 116.

26           In its fifth claim, the JAC alleges that by deciding the Tribe's land was a

27   "Reservation" and approving the gaming ordinance and the management and development

28   /////

4

1   contracts without first preparing an environmental assessment, the defendants violated the

2   National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 *et seq.*  SAC ¶ 127.

3          Finally, in its sixth claim, the JAC alleges the defendants' actions violated the

4   compact between the Tribe and the State of California.  *Id.* ¶¶ 144–51.  Under IGRA, a tribe may

5   conduct gaming on Indian lands only under a compact it has negotiated with the surrounding

6   State.  *Bay Mills*, 134 S. Ct. at 2028–29 (citing 25 U.S.C. § 2710(d)(1)(C), among other

7   provisions).  The JAC alleges that under the compact, the Tribe may not construct a gaming

8   facility on its lands after January 1, 2005.  SAC ¶ 148.  It alleges that despite California's request,

9   the compact was not amended, the 2005 date was unchanged, and therefore the casino's

10  construction violates the compact.  *Id.* ¶ 149.  In addition, the compact authorizes gaming on only

11  "Indian lands" as defined by IGRA, so the JAC alleges that because the land in question does not

12  qualify as "Indian lands," the casino's construction would violate the compact regardless of any

13  amendment.  *Id.* ¶ 150.

14  II.     PROCEDURAL HISTORY

15         The JAC's original complaint was filed in September 2013.  ECF No. 1.  The

16  federal defendants moved to dismiss in February 2014, ECF No. 12, and the JAC filed an

17  amended complaint in response, ECF No. 15.  The defendants, including Raymond Hunter, the

18  Tribe's chairman, moved to dismiss again, ECF Nos. 20, 23, and the Tribe requested leave to file

19  an *amicus curiae* brief in support of those motions, ECF No. 22.

20         In August 2015, the court granted the defendants' motions to dismiss and granted

21  the Tribe's motion to file an amicus brief.  ECF No. 50.  As noted above, the court found "[t]he

22  Jamul Indian Village is a federally recognized tribal entity entitled to tribal sovereign immunity."

23  *Id.* at 7.  The court granted defendant Hunter's motion to dismiss because the JAC had not alleged

24  any facts to show he acted in an individual capacity rather than in his capacity as the Tribe's

25  chairman, and in his capacity as chairman, he was entitled to sovereign immunity.  *Id.* at 20.  In

26  addition, the court found the doctrine described by the Supreme Court in *Ex Parte Young*, 209

27  U.S. 123 (1908), did not apply because the plaintiffs had not alleged adequately that Hunter

28  violated any federal law.  *Id.*  Similarly, the court found the plaintiffs had stated no cognizable

1   APA claim against him.  *Id.* at 20–23.  As for the federal defendants, the court concluded the case

2   could not proceed without the Tribe, whose property and contract interests the JAC directly

3   attacked.  *Id.* at 23–27.[4]  Because the Tribe's sovereign immunity prevented its joinder, and

4   because the complaint stated no claim against Hunter, the complaint was dismissed.  *Id.*  The JAC

5   was allowed leave to amend.  *Id.* at 28.

6          The JAC filed the Second Amended Complaint, which remains operative.  ECF

7   No. 51.  In January 2015 it moved for a preliminary injunction and a writ of mandate on its NEPA

8   claim.  ECF No. 60.  It sought an order enjoining construction of the casino until the defendants

9   completed a review under NEPA.  *Id.*  The court denied the motion in May 2015.  ECF No. 93.  It

10  found (1) the JAC had not identified a "major agency action" to set any NEPA process into

11  motion, *id.* at 9–12; (2) the JAC did not have standing because it was unclear whether the

12  defendants would have authority to comply with the order the JAC sought, which would have

13  directed the defendants to halt construction of the casino, *id.* at 13–14; and (3) none of the four

14  factors identified by the Supreme Court in *Winter v. Natural Resources Defense Council, Inc.*,

15  555 U.S. 7 (2008), supported the JAC's motion for a preliminary injunction, *id.* at 14–18.

16         The JAC filed an interlocutory appeal.  ECF No. 94.  The Ninth Circuit affirmed,

17  on grounds different in part than those this court had relied on, holding (1) the defendants did not

18  violate NEPA when they approved the Tribe's gaming ordinance without preparing an

19  environmental impact statement because NEPA's provisions are fundamentally irreconcilable

20  with IGRA, *Jamul Action Committee*, *supra*, 2016 WL 3910597; and (2) the plaintiffs had not

21  otherwise shown they were likely to succeed on the merits of their claims, *Jamul Action*

22  *Committee v. Chaudhuri*, ___ F. App'x ___, 2016 WL 3219593 (9th Cir. June 9, 2016)

23  (unpublished).

24

25  _____

26         [4] At hearing, the JAC's counsel asserted incorrectly that this court had not previously
    found the Tribe to be necessary and indispensable.  *See* Order on Mot. Dismiss 25–27 (finding (1)
27  "[t]he Tribe is a necessary party to this action"; (2) "it is not feasible to join the Tribe in this
    action"; and (3) the four factors identified in Federal Rule of Civil Procedure 19(b) resolved in
28  favor of dismissal).

6

1    The defendants moved to dismiss in December 2015.  *See* Tribe Defs.' Mot.

2   Dismiss, ECF Nos. 123 & 125; Fed. Defs.' Mot. Dismiss, ECF No. 127.  They challenge the

3   court's jurisdiction, argue the Tribe is a necessary and indispensable party that cannot be joined,

4   and argue the JAC lacks standing.  Because the JAC's interlocutory appeal was pending at the

5   time the motions were filed, it argued this court lacked jurisdiction to address them.  The

6   resolution of their appeal makes this argument moot.  The JAC has otherwise opposed both

7   defense motions, ECF Nos. 143, 144, and the defendants have replied, Tribe Defs.' Reply, ECF

8   No. 145; Fed. Defs.' Reply, ECF No. 146.

9   III.    DISCUSSION

10    The JAC's first, second, third, fourth, and sixth claims must be dismissed because

11   the Tribe is a necessary party and has not been joined.  The JAC's fifth claim must be restricted to

12   its allegation that the federal defendants approved the Tribe's gaming ordinance without

13   conducting the review procedure required by NEPA.

14    A.    Required Joinder: Rules 12(b)(7) and 19

15    Rule 12(b)(7) allows a litigant to request dismissal for "failure to join a party

16   under Rule 19."  Fed. R. Civ. P. 12(b)(7).[5]  "Federal Rule of Civil Procedure 19 imposes a three-

17

---

18    [5] Rule 19 provides, in relevant part, as follows:

    (a) Persons Required to Be Joined if Feasible.

19
20        (1) Required Party.  A person who is subject to service of process and whose joinder
         will not deprive the court of subject-matter jurisdiction must be joined as a party if:

21        (A) in that person's absence, the court cannot accord complete relief among
         existing parties; or

22        (B) that person claims an interest relating to the subject of the action and is so
         situated that disposing of the action in the person's absence may:

23            (i) as a practical matter impair or impede the person's ability to protect the
             interest; or

24            (ii) leave an existing party subject to a substantial risk of incurring double,
             multiple, or otherwise inconsistent obligations because of the interest.

25        . . .

26    (b) When Joinder Is Not Feasible.  If a person who is required to be joined if feasible
    cannot be joined, the court must determine whether, in equity and good conscience, the
    action should proceed among the existing parties or should be dismissed.  The factors for

27
28   the court to consider include:

7

1   step inquiry:" (1) "Is the absent party . . . required to be joined if feasible . . . under Rule 19(a)?"

2   (2) "If so, is it feasible to order that the absent party be joined?" (3) "If joinder is not feasible, can

3   the case proceed without the absent party, or is the absent party indispensable such that the action

4   must be dismissed?" *Salt River Project Agr. Imp. & Power Dist. v. Lee*, 672 F.3d 1176, 1179

5   (9th Cir. 2012) (footnote and citation omitted omitted).  At the third step, the court considers the

6   demands of "equity and good conscience."  Fed. R. Civ. P. 19(b).

7            The inquiry is fact-specific and practical.  *N. Alaska Envtl. Ctr. v. Hodel*, 803 F.2d

8   466, 468 (9th Cir. 1986); *Camacho v. Major League Baseball*, 297 F.R.D. 457, 460–61 (S.D. Cal.

9   2013).  For this reason, it may be necessary to review evidence beyond the pleadings.  *Camacho*,

10  297 F.R.D. at 461 (quoting *McShan v. Sherrill*, 283 F.2d 462, 464 (9th Cir. 1960)).  The

11  defendants, who are the moving parties, "bear the burden in producing evidence in support of the

12  motion." *Id.* (quoting *Biagro W. Sales Inc. v. Helena Chem. Co.*, 160 F. Supp. 2d 1136, 1141

13  (E.D. Cal. 2001)).

14           Here, the defendants argue the Tribe is a necessary party because the JAC alleges

15  (1) the Tribe is not a federally recognized Indian tribe and enjoys no sovereign immunity; (2) the

16  lands the Tribe purports to hold in beneficial interest are not "Indian lands" as defined by IGRA;

17  and (3) the Tribe's state compact is invalid.  *See* Tribe Defs.' Mot. at 18–29; Fed. Defs.' Mot.

18  at 26.  Defendants argue the Tribe cannot be joined because it has not waived its sovereign

19  immunity, and this case cannot be litigated in the Tribe's absence, in equity and good conscience.

20  The court reached the same conclusion in its previous order, Order on Mot. Dismiss at 23–27, and

21  /////

---

23  (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

24  (2) the extent to which any prejudice could be lessened or avoided by:

25      (A) protective provisions in the judgment;
        (B) shaping the relief; or

26      (C) other measures;

27  (3) whether a judgment rendered in the person's absence would be adequate; and

28  (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

1    makes the same decision now in light of the parties' current arguments and the pleadings

2    articulated in the complaint.

3             1.      Whether the Tribe Is Necessary

4             "[A] person is necessary if he has an interest in the action and resolving the action

5    in his absence may as a practical matter impair or impede his ability to protect that interest." *Salt*

6    *River*, 672 F.3d at 1179 (citing Fed. R. Civ. P. 19(a)(1)(B)(i)).  Here, the JAC challenges the

7    Tribe's identity, its immunity, its sovereignty, and the extent of its interest in real property.  These

8    are "legally cognizable interests" or "legally protected interests" within Rule 19's scope.  *See*

9    *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 880, 882–83 (9th Cir.

10   2004); *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990).  If this action were to

11   proceed in the Tribe's absence, including if based on the Tribe's independent decision not to seek

12   intervention, it would not be in a position to file motions or take discovery to protect its

13   sovereignty and property interests.

14            In addition, the JAC attempts to prove in this action that gaming on the Tribe's

15   land would violate its tribal-state compact, a contract between the Tribe and the State of

16   California.  The Ninth Circuit has "repeatedly held that '[n]o procedural principle is more deeply

17   imbedded in the common law than that, in an action to set aside a lease or a contract, all parties

18   who may be affected by the determination of the action are indispensable.'"  *E.E.O.C. v. Peabody*

19   *W. Coal Co.*, 610 F.3d 1070, 1082 (9th Cir. 2010) (quoting *Lomayaktewa v. Hathaway*, 520 F.2d

20   1324, 1325 (9th Cir. 1975)) (alteration in *Peabody*); *see also Dawavendewa v. Salt River Project*

21   *Agr. Imp. & Power Dist.*, 276 F.3d 1150, 1157 (9th Cir. 2002) ("[A] party to a contract is

22   necessary, and if not susceptible to joinder, indispensable to litigation seeking to decimate that

23   contract."); *Clinton v. Babbitt*, 180 F.3d 1081, 1088 (9th Cir. 1999) ("[A] district court cannot

24   adjudicate an attack on the terms of a negotiated agreement without jurisdiction over the parties to

25   that agreement.").

26            The JAC does not actually argue the Tribe has no legally protected interests in this

27   litigation; instead it argues these interests are adequately represented by others.  *See* Opp'n Tribe

28   Defs.' Mot. at 17–19; Opp'n Fed. Defs.' Mot. at 24–26.  The JAC suggests that the individually

1   named tribal officials would adequately represent the Tribe's interests in this litigation, citing the

2   Ninth Circuit's decision in *Salt River*, *see* 672 F.3d at 1181–82, and the *Ex Parte Young* doctrine,

3   *see* 209 U.S. 123.  In this respect, the JAC's arguments are nearly identical to those it advanced in

4   opposition to the defendants' previous motions under Rule 12(b)(7).  *See* Opp'n Fed. Defs.' Mot.

5   Dismiss at 15–17, ECF No. 31.  As before, having carefully reviewed the instant record, the court

6   concludes these authorities do not apply to this case:

7
          The *Ex parte Young* doctrine "permits actions for prospective non-
          monetary relief against state or tribal officials in their official
8         capacity to enjoin them from violating federal law, without the
          presence of the immune State or tribe."  In other words, in cases
9         where courts found Tribal officials were not immune, the officials
          themselves engaged in acts that violated federal law.
10

11   Order on Mot. Dismiss 26, ECF No. 50 (quoting *Salt River*, 672 F.3d at 1181).  Here, although

12   the JAC characterizes its case as one against the Tribal officials in their individual capacities, the

13   JAC targets actions the defendants undertook in their official capacities: planning, approving, and

14   initiating construction of the casino.  "Tribal sovereign immunity 'extends to tribal officials when

15   acting in their official capacity and within the scope of their authority.'"  *Cook v. AVI Casino*

16   *Enters., Inc.*, 548 F.3d 718, 727 (9th Cir. 2008) (quoting *Linneen v. Gila River Indian Cmty.*, 276

17   F.3d 489, 492 (9th Cir. 2002)).  "[A] plaintiff cannot circumvent tribal immunity by the simple

18   expedient of naming an officer of the Tribe as a defendant, rather than the sovereign entity."  *Id.*

19   (citation and quotation marks omitted).  The second amended complaint does not allow the court

20   to draw a reasonable interference that the tribal officials themselves violated federal law.  *See*

21   Order on Mot. Dismiss at 22–23.

22          2.   Whether the Tribe Can Be Joined and Whether the Tribe Is Indispensable

23          The Tribe is a federally recognized Indian tribe entitled to sovereign immunity.  It

24   has not waived that immunity.  Its joinder is therefore not feasible.  *See, e.g.*, *Santa Clara*

25   *Pueblo v. Martinez*, 436 U.S. 49, 58–59 (1978); *Cook*, 548 F.3d at 727; Order on Mot. Dismiss

26   at 25.

27   /////

28   /////

1    Rule 19 lists several specific considerations the court should weigh when joinder

2    of a necessary party is not feasible:

3          (1) the extent to which a judgment rendered in the person's absence
           might prejudice that person or the existing parties;

4

5          (2) the extent to which any prejudice could be lessened or avoided
           by:

6                (A) protective provisions in the judgment;

7                (B) shaping the relief; or

8                (C) other measures;

9          (3) whether a judgment rendered in the person's absence would be
           adequate; and

10

11         (4) whether the plaintiff would have an adequate remedy if the
           action were dismissed for nonjoinder.

12   Fed. R. Civ. P. 19(b). The court's decision on this question is an exercise of discretion. *Salt*

13   *River*, 672 F.3d at 1179.

14         The court once again concludes this action cannot proceed in the Tribe's absence.

15   *See* Order on Mot. Dismiss at 25–27.  First, the Tribe's interests in its status, its sovereignty, its

16   beneficial interests in real property, and its contractual interests cannot be adjudicated without its

17   formal presence.  Any ruling in the JAC's favor would also practically impair the Tribe's

18   sovereign power to negotiate a compact with California.  *See Am. Greyhound Racing, Inc. v. Hull*,

19   305 F.3d 1015, 1024 (9th Cir. 2002).  Second, the court cannot lessen prejudice to the Tribe by

20   customizing relief, receiving amicus briefs, or allowing the Tribe's officials to litigate on its

21   behalf.  It is impossible, for example, for the JAC to prove the Tribe is not entitled to sovereign

22   immunity without depriving the Tribe of a central aspect of that sovereignty, immunity from suit,

23   regardless of any caveat or limitation this court might impose.  No party has proposed any such

24   limitation.  Third, a judgment would also prove inadequate.  Whatever this court were to order,

25   given the Tribe's likely continued assertions of immunity in any future litigation or actions to

26   enforce, the conflict would be unchanged, if not more chaotic.  Fourth, the "lack of an alternative

27   forum does not automatically prevent dismissal of a suit."  *Makah*, 910 F.2d at 560.  "[T]his result

28   is a common consequence of sovereign immunity," and as applicable here, "the [Tribe's] interest

11

1    in maintaining [its] sovereign immunity outweighs the [JAC's] interest in litigating [its] claims."

2    *Am. Greyhound*, 305 F.3d at 1025.

3                Finally, this reasoning applies equally to all claims but the fifth claim against the

4    federal defendants under NEPA.  In each of the other five claims, the JAC alleges that the Tribe is

5    not a federally recognized Indian tribe, that the real property on which the casino will be built is

6    not "Indian lands" as defined by IGRA, or that the casino's construction and operation would

7    violate the Tribe's state compact.  *See* SAC ¶¶ 75, 77, 87, 89, 91–95, 101–06, 118–19, 150.  The

8    JAC asks the court to declare in effect that the Tribe is not an Indian tribe, that its land is not its

9    own, and that it violated its compact with California.  The Tribe is a necessary party, it cannot be

10   joined, and its absence prevents this case from going forward.

11               Because the defects identified in this order are the same as those identified in the

12   court's previous order, the court is not persuaded that plaintiffs should be allowed to amend

13   claims one, two, three, four and six.  *See, e.g.*, *Cafasso, U.S.* ex rel. *v. Gen. Dynamics C4 Sys.,*

14   *Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011) (futility may support a district court's decision to

15   dismiss without leave to amend).  Moreover, "the district court's discretion to deny leave to

16   amend is particularly broad where plaintiff has previously amended the complaint."  *Id.* (citation,

17   quotation marks, and alteration omitted).  Leave to amend these claims is denied.

18         B.      The Fifth Claim under NEPA

19               As summarized above, the JAC alleges the federal defendants decided the Tribe's

20   land was a "Reservation" and approved the Tribe's gaming ordinance and the management and

21   development contracts without first conducting the review required by NEPA.  SAC ¶ 127.

22               First, to the extent the JAC alleges the federal defendants violated NEPA by

23   approving the Tribe's gaming ordinance without preparing an environmental impact statement,

24   the Ninth Circuit's decision on the interlocutory appeal, issued since the hearing in this court,

25   requires dismissal.  *See* 2016 WL 3910597, at *6 ("Contrary to JAC's arguments, NIGC's

26   approval of the Tribe's gaming ordinance without conducting a NEPA environmental review did

27   not violate NIGC's obligations under NEPA because where a clear and unavoidable conflict in

28   statutory authority exists, NEPA must give way." (citation and quotation marks omitted)).

1          Second, the Tribe's construction of a casino on its land is not a major federal

2   action.  *See* Order on Prelim. Inj. at 14.  Neither was the casino's construction subject to the

3   federal defendants' approval.  *See id.* at 10; *accord* 2016 WL 3219593, at *1.  The court cannot

4   order the federal defendants to halt construction of the casino.  *See* Order on Prelim. Inj. at 14; *cf.*

5   Second Am. Compl. at 31 (requesting this relief).

6          Third, "[t]o the extent plaintiffs contend that the land on which the Jamul casino is

7   being built is not Indian land, circuit precedent forecloses that argument."  2016 WL 3219593,

8   at *1 (citing *Big Lagoon Rancheria v. California*, 789 F.3d 947, 953 (9th Cir. 2015) (en banc)

9   ("[A] challenge to the BIA's decision to take land into trust is a garden-variety APA claim.  Such

10   claims assert merely that the Secretary of the Interior's decision to take land into trust violates a

11   federal statute. . . . [P]arties cannot use a collateral proceeding to end-run the procedural

12   requirements governing appeals of administrative decisions." (citations, quotation marks, and

13   alterations omitted))).

14          This leaves the JAC's claim that the federal defendants did not prepare an

15   environmental impact statement in compliance with NEPA when they approved the Tribe's

16   gaming management contract.  The Tribe is not a necessary party to this claim; it has no legally

17   protectable interest in the federal defendants' execution of a NEPA review.  The fifth claim may

18   therefore proceed on the JAC's request for declaratory relief against the federal defendants only.

19          When the NEPA question was tested in the context of JAC's motion for a

20   preliminary injunction, the federal defendants responded with evidence showing they had not in

21   fact approved a gaming management contract, contrary to the JAC's allegation.  *See* Order on

22   Prelim. Inj. at 7–8.  Later, in a status order, the court ordered the parties to give notice within

23   seven days of any action by the NIGC Chairman on the Tribe's gaming management contract.

24   Status Order Nov. 4, 2015, at 7, ECF No. 115.  No notice has been filed.  The court therefore

25   gives notice of its intent to convert the federal defendants' motion with respect to the fifth NEPA

26   claim into one for summary judgment under Federal Rule of Civil Procedure 12(d) and consider

27   evidence that a gaming management contract has not in fact been approved.  *See* Fed. R. Civ. P.

28   12(d)  ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented

1    to and not excluded by the court, the motion must be treated as one for summary judgment under

2    Rule 56.  All parties must be given a reasonable opportunity to present all the material that is

3    pertinent to the motion.").

4    IV.    <u>CONCLUSION</u>

5           The tribally affiliated defendants' motion to dismiss is GRANTED without leave

6    to amend.  The federal defendants' motion is GRANTED IN PART without leave to amend as to

7    claims one, two, three, four and six.  This order resolves ECF Nos. 123 and 125.

8           The court GIVES NOTICE of its intent to convert the federal defendants' motion

9    to dismiss claim five into one for summary judgment on the same claim under Federal Rule of

10    Civil Procedure 12(d) to allow consideration of evidence on the limited question of whether the

11    Tribe's gaming management contract has been approved.  Within thirty days of the date this order

12    is filed, any party may file a response addressing whether summary judgment should be granted

13    to the federal defendants in this respect.  Briefing shall not exceed five pages and may be

14    accompanied by any relevant evidence permitted by Federal Rule of Civil Procedure Rule 56 and

15    the corresponding Local Rules of this District.

16           IT IS SO ORDERED.

17    DATED:  August 5, 2016.

18

19    _____

20    UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

27

28